## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MASSACHUSETTS

_____

|  |  |  |
|---|---|---|
| **CRAFT BEER STELLAR, LLC,** | : | |
| | : | |
| **Plaintiff,** | : | |
| | : | |
| **v.** | : | |
| | : | **Civil Action No._____** |
| **HOPPY DAYS, LLC a/k/a "CRAFT** | : | |
| **BEER CELLAR – GARDINER" a/k/a** | : | |
| **"CBC-GARDINER,"** | : | |
| **JOHN CALLINAN, and** | : | |
| **JOHN DOES 1-20,** | : | |
| | : | |
| **Defendants.** | : | |
| | : | |

_____:

### PLAINTIFF CRAFT BEER STELLAR, LLC'S
### COMPLAINT AND DEMAND FOR JURY TRIAL

## I. INTRODUCTION

1.      The Plaintiff, Craft Beer Stellar, LLC, (hereinafter "The Brand" or "CBS"), respectfully submits its Complaint and Demand for Jury Trial (hereinafter the "Complaint") against the Defendants, Hoppy Days, LLC a/k/a "Craft Beer Cellar – Gardiner" a/k/a "CBC-Gardiner" (hereinafter "CBC-Gardiner"), John Callinan (hereinafter "Callinan") and John Does 1-20 (hereinafter "John Does" or the "Does")(collectively, together hereinafter the "Defendants") in the above-captioned action.  The Plaintiff's allegations, as set out herein, are asserted from, and resulting from the Defendants' violations of the following:

   a.      violation of the Defend Trade Secrets Act, 18 U.S.C. §§ 1836, 1836(b)(1), *et seq.* (hereinafter the "DTSA");

   b.      violation of the Computer Fraud and Abuse Act, 18 U.S.C. §§ 1030, 1030(g), *et seq.* (hereinafter the "CFAA");

c.      violations of the Massachusetts trade secrets law, M.G.L. c. 93, §§ 42 & 42A;

d.      unfair and deceptive trade practices, unfair competition, and violations of the Massachusetts Consumer Protection Act, c. 93A, §§ 2 & 11;

e.      various breaches of contract (Franchise Agreement);

f.      various breaches of the implied covenant of good faith and fair dealing (Franchise Agreement);

g.      unjust enrichment;

h.      promissory estoppel / detrimental reliance;

i.      commercial (trade) disparagement;

j.      defamation (slander and libel);

k.      tortious interference with prospective business relations;

l.      fraud and deceit;

m.      negligent misrepresentation;

n.      aiding and abetting by Defendants CBC-Gardiner and Callinan of the violations of law of the Defendant John Does, set forth herein, including but not limited to the DTSA, CFAA, breach of contract, defamation, commercial (trade) disparagement, fraud and deceit, Massachusetts trade secrets law, M.G.L. c. 93, §§ 42 & 42A, and/or Massachusetts Consumer Protection Act, c. 93A, §§ 2 & 11;

o.      civil conspiracy; and/or

p.      accounting, constructive trust / declaratory and/or equitable relief.

2.      The Plaintiff further respectfully submits this Complaint for injunctive relief, an accounting, declaratory relief and for damages in connection with and arising out of the breach of

the Franchise Agreement, dated and/or executed in or about April 2015 (hereinafter the "Agreement") by the Defendants, Callinan and/or CBC-Gardiner, and, *inter alia*, for their unfair and deceptive trade practices and conduct, to The Brand's detriment. The Franchise Agreement, between The Brand, on the one hand, and Callinan and CBC-Gardiner, on the other hand, is attached, restated and incorporated by reference herein as **Exhibit A**.

3.      The Plaintiff's allegations, as set forth herein, are asserted against the Defendants for their unjust enrichment and breaches of the Agreement, including but not limited to their unlawful termination of the Agreement, their failure to tender royalties, fees and monies, as due and owing, for their unfair competition and violations of confidentiality and non-competition agreements, and for an accounting, injunctive and other equitable relief, and for damages resulting from the Defendants' violations of law and unfair, deceptive and anti-competitive trade practices in violation of the Massachusetts trade secrets law, M.G.L. c. 93, §§ 42 & 42A, and in violation of the Massachusetts Consumer Protection Act, c. 93A, §§ 2 & 11.

4.      The Plaintiff further alleges that, as a result and as caused by the Defendants' aiding and abetting the misappropriation and public dissemination of its trade secrets and confidential and proprietary information by Defendants John Does, CBS has suffered irreparable harm to its business and reputation in the craft beer industry, damages from their unfair and deceptive trade practices, and anti-competitive acts, causing lost revenue, lost profits and lost prospective business, together with its injuries and damages.

5.      The Plaintiff respectfully requests that its causes of action against the Defendants proceed to a trial by jury, that judgment be entered on all Counts against the Defendants and that The Brand be awarded its special damages, general and/or compensatory damages and losses, costs, interest, plus multiple and/or punitive damages, attorneys' fees, and that temporary,

equitable relief be granted, and that declaratory relief be entered, and any such other relief as this Honorable Court deems just and appropriate.

## II. **PARTIES**

6.      The Plaintiff, Craft Beer Stellar, LLC, is a limited liability company, duly organized in the Commonwealth of Massachusetts and with its principal place of business located at 51 Leonard Street, Cellar Floor, Middlesex County, Belmont, Massachusetts 02478.  Craft Beer Stellar, LLC has two (2) members, Suzanne Schalow, and Kathryn Baker, both of whom are residents of the Commonwealth of Massachusetts.

7.      Upon information and belief, the Defendant, Hoppy Days, LLC, is a limited liability company, duly organized pursuant to the laws of the State of Maine and with a principal place of business located at 339 Water Street, Gardiner, Maine 04345. Upon information and belief, Defendant Callinan is the sole Manager and Member of Defendant Hoppy Days, LLC.

8.      Upon information and belief, the Defendant, John Callinan is a resident of the State of Maine. Upon information and belief, Defendant Callinan is the sole Manager and Member of Defendant Hoppy Days, LLC.

9.      Upon information and belief, the Defendants, John Does 1-20, are unknown persons and/or entities, who have registered with and/or posted upon the website owned and/or maintained by Glassdoor, Inc., and have publicly distributed and disseminated certain false, defamatory and disparaging statements and content, by and through Glassdoor, and while allegedly breaching their contractual duty of confidentiality and duty of loyalty to the Plaintiff. Upon information and belief, the identity, I.S.P. contact information, address, residency and/or other related information of Defendant Does is known, available and/or within the possession, custody

and/or control of Defendants CBC-Gardiner and/or Callinan, but is not known, available and/or within the possession, custody and/or control of the Plaintiff.

### III. JURISDICTION AND VENUE

10.     The Plaintiff asserts that this Honorable Court has jurisdiction over this action under 28 U.S.C. § 1331, as the Plaintiff has alleged, and there exists against the Defendants, a federal cause of action pursuant to the Defend Trade Secrets Act, 18 U.S.C. §§ 1836, 1836(b)(1), and the Computer Fraud and Abuse Act, 18 U.S.C. §§ 1030, 1030(g), *et seq*.

11.     The Plaintiff further asserts that this Honorable Court also has jurisdiction over this action under 28 U.S.C. § 1332 because, upon information and belief, the known Parties are of complete diversity and the amount in controversy exceeds $75,000.00.

12.     The Plaintiff further contends that, pursuant to 28 U.S.C. § 1391(b), venue is proper in the District of Massachusetts in that, this Court is the District where the Plaintiff is headquartered and has its principal place of business, and is where the violative conduct described herein is alleged to have occurred.

13.     The Plaintiff contends that this Honorable Court has personal jurisdiction, generally and specifically, over Defendants CBC-Gardiner and Callinan as arising from their extensive business contacts, generally over time and within the Commonwealth of Massachusetts, and specifically in their business dealings with the Plaintiff regarding the violative conduct, as alleged herein, within the Commonwealth of Massachusetts.

14.     Plaintiff CBS further contends that this Honorable Court has personal jurisdiction, generally and specifically, over Defendant Does, generally over time and within the Commonwealth of Massachusetts, and specifically in their respective business dealings with the Plaintiff, as described in their extensive business dealings and in their respective contracts and/or

employment with the Plaintiff, and described, in detail, by their postings on Glassdoor regarding the violative conduct, as alleged herein, within the Commonwealth of Massachusetts.

## IV. FACTUAL BACKGROUND

### A. The Brand, Its Corporate Mission and Access to Its Trade Secrets and to Its Confidential and Proprietary Information

15.     Founded in or about 2010, Plaintiff Craft Beer Stellar, LLC is a locally owned and operated franchisor of craft beer stores, with franchises located in the Commonwealth of Massachusetts and throughout the United States. By its corporate mission, CBS focuses upon amazing beer, hospitality and education. The Brand Team lives and breathes craft beer and requires its franchisees, including but not limited to Defendants CBC-Gardiner and Callinan, to follow its mission of knowledge, education and hospitality in the craft beer world.  CBS's passion is to the Craft Beer family and collaborating in order to introduce its customers to the best beers in the world. In developing this network of franchises, CBS has developed extensive contacts throughout the craft beer industry and community, including customers, brewers, vendors, distributors and/or members of the craft beer media.

16.     In the ordinary course of operating its franchise network, each franchise retail location is characterized by the moniker "Craft Beer Cellar," or "CBC," together with other identifying information, such as town and/or location.  Persons interesting in acquiring, owning and operating a CBC franchise generally meet with, and are interviewed by, the senior management of The Brand in order to determine whether such prospective franchisee meets the standards of The Brand to become an owner and operator a Craft Beer Cellar franchise. In the ordinary course of the Plaintiff's business, due diligence is generally conducted both by The Brand and by the prospective franchisee.

17.     Upon the conclusion of the preliminary due diligence and interview phase, the Plaintiff, in the ordinary course of its business, has provided prospective franchisees, including but not limited to CBC-Gardiner and Callinan, on a confidential basis, with a significant amount of proprietary material, information and training.  With the expenditure of substantial time, effort and cost, The Brand has developed trade secrets, and such confidential and proprietary techniques and methods through its decade of experience, education and training in the craft beer community.

18.     As part of the due diligence and deliberative process, The Brand delivered to prospective franchisees, including but not limited to CBC-Gardiner and Callinan, its Franchise Disclosure Document (hereinafter the "FDD") on a confidential basis, which is a voluminous document containing detailed information relating to all aspects of operating a Craft Beer Cellar franchise, and which included, *inter alia*, a sample Franchise Agreement (hereinafter "FA").

19.     Continuing on through the due diligence and deliberative phase, the Plaintiff provided its prospective franchisees, including but not limited to CBC-Gardiner and Callinan, with an extended period to review and evaluate, on a confidential basis, the FDD, the sample FA, and other proprietary and confidential information related to the ownership and operation of a craft beer franchise.  *See* Certain Pages of the Franchise Disclosure Document, as attached, restated, and incorporated by reference herein as **Exhibit B**.

20.     Upon the conclusion of the negotiations, and the due diligence and deliberative process, The Brand has required prospective franchisees, including but not limited to CBC-Gardiner and Callinan, to execute a Franchise Agreement with CBS and to pay a franchise fee to the Plaintiff. After the execution of the FA by the parties, including but not limited to CBC-Gardiner and Callinan, The Brand invested a substantial amount of time, effort, man-hours and

expertise in providing educating, and in assisting and guiding the new franchise owner through the various stages necessary to open its store.

21.     The Franchise Agreement between the franchisees and The Brand, including but not limited to CBC-Gardiner and Callinan, contain standard contractual provisions, which obligate the franchisee to maintain the confidentiality of the Plaintiff's exclusive and proprietary information and property.  Franchisees are required to uphold the high standards of The Brand, to routinely and uniformly follows the standards and requirements of the "CBC" franchise community, and take no steps to harm the reputation and goodwill created by The Brand throughout the craft beer community.

22.     Among the Defendants' franchisee contractual obligations, Section 5.1 of the Franchise Agreement between the Parties, entitled "*Operations Manual, Equipment, Plans and Specifications, and Public Relations,*" provided, *inter alia*, in pertinent part:

> "The Operations Manual is and will remain *confidential and our exclusive property*. *You will not disclose*, copy or duplicate any part of the Operations Manual *for any reason*."

*See* Franchise Agreement (**Exhibit A**), § 5.1, at p. 13 (emphasis added).

23.     Furthermore, Section 5.3 of the Parties' Franchise Agreement, entitled "*Service Marks, Operations Manual, and Method of Operation Are Our Exclusive Property*," also provided, *inter alia*, in pertinent part:

> "You agree that the Service Marks, Operations Manual, and Method of Operation are *our sole and exclusive property*. Except for the Franchise granted to you by this Agreement, *nothing* in this Agreement or any other agreement *will give you or others any right, title, or interest whatsoever* in or to the Service Marks, Operations Manual, or Method of Operation."

*See Id.* (**Exhibit A**), § 5.3, at p. 16 (emphasis added).

24.     Additionally, Section 5.9 of the Franchise Agreement, entitled "*You Will Not Communicate Confidential Information*," provided, *inter alia*, in pertinent part:

> "You *specifically acknowledge* that *you will receive valuable specialized and confidential information, including information regarding our operational, sales, promotional and marketing methods and techniques, operating procedures, processes, practices, lists of suppliers, customer lists, manuals, marketing and sales techniques and strategies, and the Method of Operation*. Unless required by court order or applicable law, *you agree not to copy*, download to internet, intranet, modem, fax, e-mail, mail *or send any confidential material or divulge any material directly or indirectly to any other person or enterprise* outside of the Craft Beer Cellar system."

*See Id.* (**Exhibit A**), § 5.9, at p. 19 (emphasis added).

25.     Moreover, Section 5.10 of the FA, entitled "*Conflicting or Competing Interests,*" provided, *inter alia*, in pertinent part:

> "You will assure that you and your owners, directors, officers, partners, shareholders, members, employees, consultants, and agents, during the term of this Agreement and for a period of 2 years after expiration or termination of this Agreement *do not*:
>
> ***
>
> 3.      do or perform, directly or indirectly, *any other act injurious or prejudicial to our goodwill* associated with the Service Marks and Method of Operation."

*See Id. (***Exhibit A***)* § 5.10, at p. 20 (emphasis added).

26.     For several years and throughout its franchisee network, the Plaintiff has routinely employed a third-party communication and management electronic system and/or service, known as "Basecamp," in order to facilitate and organize the management of, and confidential communications between and among, CBS and its franchisees. The Brand is currently transitioning to different third-party confidential communications and management electronic systems for its franchisee network.

27.     Franchise owners and their senior management, such as Defendants CBC-Gardiner and Callinan, have a strict duty to maintain the confidentiality of their communications and as to the proprietary information shared with The Brand and its franchisees.  Through Basecamp, franchise owners and senior managers routinely gain access to trade secrets and confidential and proprietary information, which is not available to the public or third-parties, including but not limited to: information regarding marketing and branding ideas and plans, promotions of certain craft beers, financial and operational information, including information as to sales, margins, costs, discounts, potential franchise locations, vendor contracts and negotiations, and numerous other various aspects of the CBS franchise operations.

28.     Upon execution of the Franchise Agreement, franchise owners, such as Defendants CBC-Gardiner and Callinan, were granted confidential, restricted access to trade secrets and confidential information, including but not limited to formulas, patterns, devices and compilations of information, exclusively and secretly created and developed by The Brand, intended to be used in the business of CBS and its franchisees, including but not limited to CBC-Gardiner and Callinan.

29.     The Brand's trade secrets and confidential information gave CBS and its franchisees, including but not limited to CBC-Gardiner and Callinan, the opportunity to obtain an advantage or a potential advantage over competitors who did not know or use such secret information. The trade secrets and confidential information of the Brand are, and were during the relevant time, used in the operation of CBS's business and that of its franchisees, including but not limited to CBC-Gardiner and Callinan, and are, and were during the relevant time, valuable and secret, and providing an actual and/or potential economic advantage over competitors.

30.     Thus, upon becoming CBS franchisees, owners, including but not limited to CBC-Gardiner and Callinan, were informed by The Brand and agreed that the Plaintiff's trade secrets

and confidential and proprietary information are, and were during the relevant time period, confidential and trade secrets, and that they had a duty to maintain the strictest confidence as to such trade secrets and confidential and proprietary information.

31.     The cornerstone of the Plaintiff's business relationships with franchisees, including but not limited to CBC-Gardiner and Callinan, and employees is, and was during the relevant time, confidentiality and the importance of the "Craft Beer Cellar" reputation and goodwill. Throughout the relevant time, The Brand has taken commercially reasonable steps to preserve the secrecy of its confidential information and trade secrets.

32.     The Plaintiff has utilized commercially reasonable and appropriate security precautions with its franchisees, including but not limited to CBC-Gardiner and Callinan, to maintain the confidentiality of its trade secrets, including but not limited to: a) requiring and the existence of express agreements restricting disclosure; b) using technology and software to create systems, such as Basecamp, to enhance security precautions and to prevent the acquisition of confidential information and trade secrets by unauthorized third-parties; c) maintaining restrictions and limits as to the circumstances under which trade secrets and confidential information is, and was during the relevant time period, disclosed and thereby demonstrating, expressly, implicitly and by reasonable inference, to franchisees and employees possessing such information that further disclosure, with the express prior approval of The Brand, was strictly prohibited; and d) maintaining restrictions and limits on the information placed in the public domain.

33.     The Plaintiff required all of its franchisees, including but not limited to CBC-Gardiner and Callinan, to maintain the strictest confidentiality by owners and employees of its trade secrets and confidential information. The Plaintiff made extensive use of confidentiality provisions in its contracts, such as its Franchise Agreements, and required communications be

transmitted and received through the confidential Basecamp system.  CBS periodically reviewed and checked its franchisees' compliance with its systems and requirements, including but not limited to CBC-Gardiner and Callinan, and reviewed compliance with their duty to use Basecamp and maintain trade secrets as confidential.

34.     By the Defendants' Franchise Agreement and their contractual obligations with The Brand, CBS's financial information, methodologies, sales trends, pricing information, margins, product offerings, roadmaps, identification of competitive opportunities and competitive threats, profitability, information as to the Plaintiff's operations and the operations of franchisees, and social media and marketing strategies and campaigns are, and were during the relevant time period, protectable as trade secrets and confidential information.

### B.     Defendants CBC-Gardiner and Callinan Become Franchisees of The Brand

35.     In or about 2010, CBS began its corporate mission dedicated to amazing beer, hospitality and education. The Brand Team is passionate about craft beer and requires its franchisees, including but not limited to the Defendants, to follow its mission of knowledge, education and hospitality in the craft beer world.  CBS's passion is to the Craft Beer family and collaborating to order to introduce its customers to the best beers in the world.

36.     Since its inception, The Brand has required a certain level of Cicerone certification for all franchisees, including but not limited to Defendants CBC-Gardiner and Callinan, as education and certification is a critical franchise requirement.  The Plaintiff's mantra has been that education and training is the future for The Brand's concept and for good beer.  Since its inception, a senior manager of The Brand has had responsibility to monitor the operations and activities of franchisees, providing assessments and updates as to where the various franchisees were in their

development, and where they needed to be, from an operational, financial and educational perspective.

37.     In or about 2015, senior managers at CBS met with Defendant Callinan, who became the principal of the Defendant, CBC-Gardiner. They had a number of discussions about The Brand's mission statement, about how important it was to business of franchisees and their "Beer Geeks" to learn and become educated about craft beers.   The Plaintiff emphasized to Callinan that he was required to become certified, in accordance with the CBS Franchise Agreement, as a Certified Beer Server and a Certified Cicerone.

38.     During the discussions in the or about 2015, The Brand delivered its standard Franchise Disclosure Document and the standard Franchise Agreement to the Defendant, and reviewed the important provisions with Callinan.  They discussed the obligation of franchisees to select a franchise location, and emphasized that CBS had no liability for the location, its selection or that the Defendants' franchise would be successful at such a location.   The Plaintiff and the Defendants discussed issues such the commercial leases, and importance of having certain terms, conditions and contingencies in order to allow the franchisee to terminate its lease if certain, unforeseen events occurred.

39.     In their discussions about the FA, the Plaintiff described the importance of the non-competition and non-solicitation provisions, and detailed the critical importance maintaining the confidentiality of trade secrets and proprietary information, and protecting the goodwill and reputation of The Brand and its franchisees. CBS discussed, at length with Callinan the challenges of operating a craft beer franchise and that there was no guarantee of success of the franchise business.

40.     The Defendant was also informed by CBS, and understood, that his franchise could not simply terminate and walk away from their obligations to The Brand. Callinan was informed and understood that after any termination of the Agreement, he could not simply operate a competitive beer-oriented business at the location or within the non-competition geographic area. The Plaintiff explained issues such as colors, style, branding, reputation and goodwill were, and are, critical intellectual property assets of The Brand. By the Franchise Agreement, CBS detailed to the Defendant the importance of protecting The Brand and its franchisees, avoiding confusion in the eyes of customers and potential customers of the Craft Beer family.

41.     The Defendant was also apprised by The Brand of the various deadline within the Franchise Agreement, and understood that all employees had to become Certified Beer Geeks within thirty (30) days of hire, and that Callinan had one (1) year from the effective date of FA to become a Certified Cicerone. A Cicerone student must understand "beer styles" and "style parameters," including the history, characteristics and flavor attributes by region, in his preparation.  The test includes knowledge of beer ingredients and "taste and flavor," with an identification of normal flavors of beer and their source.  Cicerone candidates must be able to be conversant in the "pairing beer with food," and be knowledgeable about serving and storing, and the distinctions between bottled beer and draft beer.

42.     Needless to say, it is a comprehensive program and one that requires a significant amount of study for most Cicerone students. Upon information and belief, Callinan had no background or training whatsoever in craft beers, and sought training, support and assistance, beyond the requirements of the Franchise Agreement, from the Plaintiff in order to meet his education, certification and training requirements.

43.     The Plaintiff urged and encouraged the Defendants to engage professionals, who would be able to provide appropriate consultation and advice as to the legal, financial, real estate, financial and operational issues and in conducting due diligence, reviewing the FDD and FA, stores locations and other issues.  For example, despite the critical input as to the appropriateness of the location, Defendant Callinan insisted upon opening his Craft Beer Cellar in Gardiner, Maine, which has a small metropolitan population and has limited growth potential for a craft beer store. Upon information and belief, in or about 2015, Defendant Callinan engaged, or had the opportunity to engage, such professionals in the various disciplines as necessary and appropriate to open his CBC-Gardiner franchise.

44.     In or about 2015, Defendant John Callinan read and understood the Franchise Disclosure Document and the Franchise Agreement, as provided to him by The Brand.  *See* Franchise Agreement (**Exhibit A**), § 9.14(2), at pp. 48-49; *see also* FDD Pages, (**Exhibit B**).

45.     In or about 2015, the Defendants made representations to CBS that they had read and understood the Franchise Agreement and its terms and conditions, which The Brand relied upon, to its detriment. The Defendants made such representations to the Plaintiff, as follows:

> "You acknowledge that you have had ample time to read and have read this Agreement and our Franchise Disclosure Document. You *understand and accept the terms, conditions and covenants contained in this Agreement*. They are necessary to maintain our high standards of quality, service and uniformity at all franchises. They *protect and preserve the goodwill* of the Service Marks and the confidentiality and *value of the Method of Operation*. You have *received advice from advisors of your own choosing regarding all pertinent aspects of this Franchise and the franchise relationship created by this Agreement*. You also acknowledge that you believe that you have made a good decision for yourself or your partners or your corporation based upon what you believe is your ability to run and control a business of your own."

*See Id.* (**Exhibit A**), § 9.14(2), at pp. 48-49 (emphasis added).

46.     On or about April 28, 2015, Defendant John Callinan executed the Franchise Agreement, as joined by Defendant CBC-Gardiner, and became duly obligated under the terms and conditions of the FA, which was also executed by The Brand. *See Id.* (**Exhibit A**).

47.     During this time, the Defendants engaged a real estate agent and scouted various locations for their franchise and focused on a building located at 339 Water Street, Gardiner, Maine 04345. In his conversations with the Plaintiff, Defendant Callinan insisted in purchasing the Gardiner building as a more cost effective option to operate and finance the franchise.  The Defendants were dismissive about the words of caution from CBS about a location in a small locale such as Gardiner, Maine, emphasizing Callinan's decades of business experience in being able to evaluate business opportunities and locations.

48.     Defendant Callinan repeatedly defended the alleged appropriateness of a franchise location in Gardiner and discussed how he had shopped there for years and enjoyed the vibe and demographics of the town. The Brand and the Defendants also reviewed the demographics and people per square mile of the territories, and compared the numbers against the Flagship Store in Belmont and other franchisees. Simply stated, the Defendants refused to listen to the Plaintiff and selected the Gardiner location based upon their own decision.

49.     Thereafter, the Defendants did not raise the issue of the Gardiner location for months.  As a result, The Brand relied, to its detriment, upon the approval of the Defendants as to the location of the Gardiner franchise and proceeded to invest time, effort, man-hours and expertise, in assisting the Defendants with getting the CBC-Gardiner store opened.

50.     Indeed, Section 1.3 of the Franchise Agreement expressly provided, in pertinent part, as follows:

"… We [the Franchisor] *will not be liable* for *any consequences of your choice of any franchise site.*… Any site recommendation or *approval we make* is *not a representation* that any particular site is available *or legally appropriate for use as a franchise site*…. We [The Franchisor] *will have no liability* with respect to the selection *or approval of a location* or any lease for the Premises, *nor liability with respect to any site recommendations we make*."

*See* Franchise Agreement (**Exhibit A**), § 1.3, at p. 3 (emphasis added).

51.     Between 2015 and 2016, The Brand made a substantial investment of time, effort, and expertise into assisting the Defendants to opening and initial operations of CBC-Gardiner. Indeed, on or about January 15, 2016, Defendant Callinan emailed the Plaintiff and stated, as follows:

> Hi Suzanne,
>
> *I personally and professionally truly appreciated the visit from the Brand Team yesterday*. The timing could not have been better. January, as you know much better than us, is a slow month and it can be a let down after the holiday rush. The visit by the three of you reenergized the group (including me). I hope that it is understandable that in our first month or so of operations we have been focused on ensuring that we are providing the best and freshest beer available while working to make the CBC Gardiner shop a welcoming and enjoyable place to be for customers and for staff. Your *reminding us of the educational mission of the larger organization will help us to broaden our own mission as well as reinforce our already strong sense of identity with the Brand*. You folks are *exemplary standard bearers*. Moreover, it is *just plain good to see you*, Kate, and Marla.
>
> We will be in touch over the coming days and weeks.
>
> Cheers.
>
> John.

*See* Email of John Callinan to Suzanne Schalow, dated January 15, 2016, attached, restated and incorporated by reference as **Exhibit C** (hereinafter the "January 15th Email")(emphasis added).

52.     Thus, CBC-Gardiner opened its doors and began operations as the new Craft Beer Cellar store in Gardiner, Maine. Upon information and belief, Defendant Callinan, directly or

indirectly, owned the building in which CBC-Gardiner was located and thereby paid himself rental income from the 339 Water Street building.

53.     Upon information and belief, Defendant Callinan, directly or indirectly, earned rental income on the 339 Water Street building, which was a profitable venture for him.

54.     Between in or about 2015 and 2017, the Plaintiff continued to improve its interactions and dealings with franchisees and the operations and technology within the franchise network.

55.     For example, in or about 2017, The Brand reviewed and changed certain franchise network systems, and initiated new processing systems called "BatchOut" and "First Data." Indeed, Defendants acknowledged that changeover to BatchOut and First Data, and expressed appreciation for the responsiveness and support from The Brand Team. *See* Email Thread from John Callinan to Suzanne Schalow, dated December 2017, attached, restated and incorporated by reference herein as **Exhibit D** (hereinafter as the "December Email Thread").

56.     Unfortunately, the Defendants refused to comply with their contractual obligations under the Franchise Agreement, including but not limited to *inter alia*, the failure and refusal to comply with, *inter alia*, the FA's educational requirements, technology requirements, and fully implement the CBC online web store.

57.     Thus, on or about October 21, 2017, The Brand issued its Notice of Default to the Defendants, for their continued failure to comply with the Franchise Standards of Operation (FA, § 5), including but not limited to the "Training" provisions under Section 3.1 of the Franchise Agreement, and demanded that the Defendants cure their breaches within not less than thirty (30) days. *See* Notice of Default, from the Plaintiff to the Defendants, dated October 21, 2017, attached,

restated and incorporated by reference herein as **Exhibit E** (hereinafter as the "October Default Notice").

58.     Thus, while the Plaintiff continued to support the Defendants and provided an extension of the deadline for their Default Notice, Callinan and CBC-Gardiner failed and refused to cure such default.

59.     Thus, on or about May 21, 2018, The Brand issued its Notice of Cure to the Defendants, for their continued failure to cure the October Default Notice, and their continued refusal and failure to comply with the Franchise Standards of Operation (FA, § 5), including but not limited to the "Training" provisions under Section 3.1 of the Franchise Agreement. *See* Notice of Cure, from the Plaintiff to the Defendants, dated May 21, 2018, attached, restated and incorporated by reference herein as **Exhibit F** (hereinafter as the "May Cure Notice").

60.     Unfortunately, the Defendants refused to comply with their contractual obligations under the Franchise Agreement, and raised bogus and false allegations against The Brand. Additionally, upon information and belief, the Defendants began conspiring and aiding and abetting other franchisees to create a public, coordinated attack upon the Brand, on an anonymous basis and through the website, Glassdoor.com.

### C.     Glassdoor and Its Website

61.     Upon information and belief, Glassdoor, Inc. owns and operates a website that allows users to post anonymous comments about their employers and others, including franchisors, business associates and/or affiliated companies.

62.     According to its own website, Glassdoor, Inc. is one of the world's fastest growing jobs and recruiting sites.  *See* "About Us" screen capture from Glassdoor.com, as attached, restated and incorporated by reference as **Exhibit G**.

63.     Upon information and belief, Glassdoor seeks to tout its supposed reliability as to the content posted on its website, allegedly providing job seekers an "inside scoop" of companies, based on reviews posted by the current and former employees of such companies. The website goes on to state that,

> "[u]nlike other jobs sites, all of this information is entirely shared by those who know a company best — the employees. Add to that millions of the latest jobs — no other site allows you to see which employers are hiring, what it's really like to work or interview there according to employees, and how much you could earn."

*See* **Exhibit G**.

64.     Furthermore, Glassdoor's "Corporate Fact Sheet" states, in pertinent part, that,

> "[Glassdoor] is one of the world's largest job and recruiting sites that is changing the way people search for jobs and companies…offer[ing] millions of the latest job listings, paired with proprietary user-generated content including company-specific salary reports, ratings and reviews, CEO approval ratings, interview questions and reviews, benefits reviews, office photos and more."

*See* Glassdoor Corporate Fact Sheet, updated as of February 2018, as attached, restated and incorporated by reference as **Exhibit H**.

65.     Detailing the scope and breadth of its reach in various sectors and industries, Glassdoor also provides a "Site Stats" page, which provides, in part, as follows:

> "Glassdoor Internal Data, December 2017. Glassdoor.com is the second largest job site in the U.S., according to comScore Media Metrix, December 2017.  Glassdoor has nearly 38 million reviews and insights for more than 740,000 companies. Nearly 50 million unique users visit Glassdoor monthly."

*See* Glassdoor.com Press Center / Fact Sheets & Site Stats, as attached, restated and incorporated by reference as **Exhibit I**.

**D.      Defendants Conspire With and Aid and Abet John Does in Illegally Posting Confidential Information, Trade Secrets and Defamatory Reviews of CBS**

66.     Between in or about November 2017 and in or about April 2018, nine (9) reviews of "Craft Beer Cellar," as located in Belmont, Massachusetts, were posted on Glassdoor.com. *See*

Screen Captures of Reviews (hereinafter the "Reviews"), as hereby attached, restated, and incorporated by reference herein as **Exhibit J.**

67.     Upon information and belief, Defendants CBC-Gardiner and/or Callinan are among the persons and/or entities who have posted the Reviews, and/or have conspired with, and/or aided and abetted persons who have posted the Reviews.

68.     On or about November 18, 2017, an individual, identifying himself / herself as "Current Employee – Anonymous Employee," posted a review, entitled "*Dysfunctional and incompetent*," to the website, as owned and operated by Glassdoor.  *Id.* at p. 10 (hereinafter the "First November 18th Review").

69.     The First November 18th Review stated, *inter alia*, as follows:

>  "The best advice I can give prospective franchise owners is to run. Aside from *dishonest sales projections and dishonest startup costs you have to deal with one of the least honest people I have ever known. Suzanne Schalow*.  She has the worst temperament and division making. *Most franchises are not profitable and the majority wish they had never signed on*."

*Id.* at p. 11 (emphasis added).

70.     The First November 18th Review is, and was, false, disparaging and defamatory, particularly regarding the illegal and improper disclosure of trade secrets and confidential and proprietary information regarding alleged "dishonest sales projections," and "dishonest start up costs," and is, and was, misleading, misrepresentative, omitted material information and is, and was, factually untrue, in whole and in part.

71.     The First November 18th Review is, and was, false, disparaging and defamatory, particularly regarding the illegal and improper disclosure of trade secrets and confidential and proprietary information regarding alleged assertion that "[m]ost franchisees [are] not profitable"

and the "majority wish they had never signed on," and is, and was, misleading, misrepresentative, omits material information and is, and was, factually untrue, in whole and in part.

72.     Furthermore, the statements in the First November 18th Review regarding the Plaintiff's members, Suzanne Schalow and Kathryn Baker, are, and were, false, disparaging and defamatory.

73.     Also on or about November 18, 2017, an individual, identifying himself /herself as "Current Employee – Anonymous Employee," posted a review, entitled "*A mess for prospective franchise owners*," to the website, as owned and operated by Glassdoor. *Id.* at p. 10 (hereinafter the "Second November 18th Review").

74.     The Second November 18th Review stated, *inter alia*, as follows:

> "The brand management is a mess, mostly at the hands of Suzanne Schalow.  The *Mismanagement by brand has led to a revolving door of brand staff leaving***.** Demanding people sign non competes is asinine.  The *support for franchises is poor* with Suzanne *constantly threatening to take over franchises and put stores in default*.  If you are interested in owning a franchise, the *low margins and long hours and temperamental head quarters* make this a place to stay away from"

*Id.* (emphasis added).

75.     The Second November 18th Review is, and was, false, disparaging and defamatory, particularly regarding the illegal and improper disclosure of trade secrets and confidential and proprietary information regarding alleged employee turnover, and is, and was, misleading, misrepresentative, omits material information and is, and was, factually untrue, in whole and in part.

76.     The Second November 18th Review is, and was, false, disparaging and defamatory, particularly regarding the illegal and improper disclosure of trade secrets and confidential and proprietary information regarding alleged "poor" level of support for franchisees, and is, and was,

misleading, misrepresentative, omits material information and is, and was, factually untrue, in whole and in part.

77.     The Second November 18th Review is, and was, false, disparaging and defamatory, particularly regarding the illegal and improper disclosure of trade secrets and confidential and proprietary information regarding an alleged senior manager who is, or was, allegedly "constantly threatening to take over franchises" or "put stores in default," and is, and was, misleading, misrepresentative, omits material information and is, and was, factually untrue, in whole and in part.

78.     The Second November 18th Review is, and was, false, disparaging and defamatory, particularly regarding the illegal and improper disclosure of trade secrets and confidential and proprietary information regarding "low margins" and "long hours," and is, and was, misleading, misrepresentative, omits material information and is, and was, factually untrue, in whole and in part.

79.     Furthermore, the statements in the Second November 18th Review regarding a "temperamental head quarters" are, and were, false, disparaging and defamatory.

80.     Additionally, on or about January 29, 2018, an individual, identifying himself / herself as "Current Employee – Franchise Owner," posted a review, entitled "*Do not buy a franchise*," to the website, as owned and operated by Glassdoor. *Id.* at p. 8 (hereinafter the "January 29th Review").

81.     The January 29th Review stated, *inter alia*, as follows:

> "As an owner, I fully endorse the other comments. Suzanne is a brash woman who bullies and calls names when confronted about anything. *As a franchisor they offer no real systems or processes to prospective franchises* but you don't find that out until you pay her your franchise fee.  That's when you will receive the *handbook which contains zero original ideas regarding: marketing, sales, or process.  It tells you to face product, keep shelves full, and then lays down mandates that force you*

> _as an owner to spend money to conform to their whimsy_**.**  Make sure you ask them about _pending lawsuits_ before you sign your Franchise Agreement, because they sure don't offer any information like that. Instead they tell you about their insane sales at the flagship store which was opened just outside a dry town at the right time in the right place…You are grossly incompetent as a CEO and you should stick to running the Belmont store."

_Id_. at p. 9. (emphasis added).

82.     The January 29th Review is, and was, false, disparaging and defamatory, particularly regarding the illegal and improper disclosure of trade secrets and confidential and proprietary information regarding that The Brand "offer[s] no real systems or processes to prospective franchises," and is, and was, misleading, misrepresentative, omits material information and is, and was, factually untrue, in whole and in part.

83.     The January 29th Review is, and was, false, disparaging and defamatory, particularly regarding the illegal and improper disclosure of trade secrets and confidential and proprietary information regarding that "the handbook which contains zero original ideas regarding: marketing, sales or process," and is, and was, misleading, misrepresentative, omits material information and is, and was, factually untrue, in whole and in part.

84.     The January 29th Review is, and was, false, disparaging and defamatory, particularly regarding the illegal and improper disclosure of trade secrets and confidential and proprietary information regarding that the handbook "tells you to face product, keep shelves full, and then lays down mandates that force you as an owner to spend money to conform to their whimsy," and is, and was, misleading, misrepresentative, omits material information and is, and was, factually untrue, in whole and in part.

85.     The January 29th Review is, and was, false, disparaging and defamatory, particularly regarding the illegal and improper disclosure of trade secrets and confidential and proprietary information regarding that "pending lawsuits," and is, and was, misleading,

misrepresentative, omits material information and is, and was, factually untrue, in whole and in part.

86.    On or about January 31, 2018, an individual, identifying himself / herself as "Current Employee – Franchise Owner," posted a review, entitled "*Franchisees get lied to, bullied and demeaned regularly – run away!*", to the website, as owned and operated by Glassdoor (hereinafter the "First January 31st Review").

87.    The First January 31st Review was removed by Glassdoor, but ultimately reposted on or about February 16, 2018 (hereinafter the "February 16th Review"). *See* **Exhibit J**, at pp. 3-5 (hereinafter collectively, the First January 31st Review and the February 16th Review are referred hereinafter as the "Reposted Review").

88.    The Review stated, *inter alia*, as follows:

> "The franchise program is an utter mess. The *sales projections are off by 50% or more, and the costs are off by that much too*. There is *little to no support* from 'the brand', and with such a *high turnover rate* at the brand level there's no continuity of opinions or long-term ideas…. Have an idea? Suzanne will belittle you and call you names. Want to complain? Suzanne will insult you… Want to *see the operations manual*? You have to pay the franchise fee first, and then you get the manual. The *manual is truly 50% 'what to buy and how to open,' which should be a completely separate manual*, and *50% useless info that won't help you succeed*. In the '*what to buy' section, they try to be helpful with initial purchases, but they overshoot the requirements by at least 30% of product and shelving needed*.
>
> * * *
>
>  At least 4 stores (CT, MT, Portsmouth NH, Port Washington NY) and maybe more, have closed completely, and 5 or more have sold from their original owners. That makes 9 out of approximately 35 stores that have closed or changed hands for a nearly 26% failure rate!
>
> * * *
>
> Ask them about *litigation*. Some of it is public knowledge, but they *won't disclose it* on a discovery document for a new potential franchise location even though they are legally required to do so.
>
> * * *
>
> Ask them about the brand team and support… Suzanne (insults and belittlement galore!), Kate (Who never helps and is essentially silent), Patrick (who still works on Belmont's sales floor as beer geek), and who else? Who are the other 3 that will

help forever? With the turnover rates, you're stuck with The Trump Insult Machine Schalow and Silent Kate as your "forever help."

*See* **Exhibit J**, at pp. 3-5. (emphasis added).

89.     The Reposted Review is, and was, false, disparaging and defamatory, particularly regarding the illegal and improper disclosure of trade secrets and confidential and proprietary information regarding that "sales projections are off by 50%," and is, and was, misleading, misrepresentative, omits material information and is, and was, factually untrue, in whole and in part.

90.     The Reposted Review is, and was, false, disparaging and defamatory, particularly regarding the illegal and improper disclosure of trade secrets and confidential and proprietary information regarding that "that costs are off by [50%]," and is, and was, misleading, misrepresentative, omits material information and is, and was, factually untrue, in whole and in part.

91.     The Reposted Review is, and was, false, disparaging and defamatory, particularly regarding the illegal and improper disclosure of trade secrets and confidential and proprietary information regarding the "high turnover rate," and is, and was, misleading, misrepresentative, omits material information and is, and was, factually untrue, in whole and in part.

92.     The Reposted Review is, and was, false, disparaging and defamatory, particularly regarding the illegal and improper disclosure of trade secrets and confidential and proprietary information regarding the "operations manual" and that the "manual is truly 50% what to buy and how to open," and is, and was, misleading, misrepresentative, omits material information and is, and was, factually untrue, in whole and in part.

93.     The Reposted Review is, and was, false, disparaging and defamatory, particularly regarding the illegal and improper disclosure of trade secrets and confidential and proprietary

information regarding the "operations manual" and that the manual is "50% useless info that won't help you succeed," and is, and was, misleading, misrepresentative, omits material information and is, and was, factually untrue, in whole and in part.

94.     The Reposted Review is, and was, false, disparaging and defamatory, particularly regarding the illegal and improper disclosure of trade secrets and confidential and proprietary information regarding the "operations manual" and that the recommended "initial purchases … overshoot the requirements by at least 30% of product and shelving needed," and is, and was, misleading, misrepresentative, omits material information and is, and was, factually untrue, in whole and in part.

95.     The Reposted Review is, and was, false, disparaging and defamatory, particularly regarding the illegal and improper disclosure of trade secrets and confidential and proprietary information regarding the opening, closure and/or sale of certain stores and/or their locations, and is, and was, misleading, misrepresentative, omits material information and is, and was, factually untrue, in whole and in part.

96.     The Reposted Review is, and was, false, disparaging and defamatory, particularly regarding the illegal and improper disclosure of trade secrets and confidential and proprietary information regarding that The Brand "won't disclose" the "litigation," and is, and was, misleading, misrepresentative, omits material information and is, and was, factually untrue, in whole and in part.

97.     On or about January 31, 2018, an individual, identifying himself / herself as "Current Employee – Franchise Owner," posted a review, entitled "*If you want to become a franchisee……DON'T,*" to the website, as owned and operated by Glassdoor. *See* **Exhibit J**, at p. 8 (hereinafter the "Second January 31st Review").

98.     The Second January 31st Review stated, *inter alia*, as follows:

> "The 'brand' and specifically Suzanne Schalow. Most other employees of the brand
> don't seem to stick around long. The only constant is Suzanne and this is not a good
> thing. She is one of the most rude, unhelpful, arrogant, and unprofessional bullies I
> have ever had the displeasure of working with. Instead of ever getting help, you
> usually get an insult and then a reminder of how great she and her store are. Any
> negatives you face are completely your fault despite their promises to 'always be
> available'. The only thing available to you is a constant reminder of her
> incompetence. *Many stores are not profitable* as the *margins are low* and the
> *unrealistic sales projections they provide are virtually impossible to attain*. In
> addition, *their start-up costs are estimated on the extreme low end*."

*Id*. at p. 8. (emphasis added).

99.     The Second January 31st Review is, and was, false, disparaging and defamatory,
particularly regarding the illegal and improper disclosure of trade secrets and confidential and
proprietary information regarding that "[m]any stores are not profitable," and is, and was,
misleading, misrepresentative, omits material information and is, and was, factually untrue, in
whole and in part.

100.    The Second January 31st Review is, and was, false, disparaging and defamatory,
particularly regarding the illegal and improper disclosure of trade secrets and confidential and
proprietary information regarding that "margins are low," and is, and was, misleading,
misrepresentative, omits material information and is, and was, factually untrue, in whole and in
part.

101.    The Second January 31st Review is, and was, false, disparaging and defamatory,
particularly regarding the illegal and improper disclosure of trade secrets and confidential and
proprietary information regarding that The Brand's "sales projections" are "unrealistic," and "are
virtually impossible to attain," and is, and was, misleading, misrepresentative, omits material
information and is, and was, factually untrue, in whole and in part.

102.    The Second January 31st Review is, and was, false, disparaging and defamatory, particularly regarding the illegal and improper disclosure of trade secrets and confidential and proprietary information regarding that The Brand's "start-up costs are estimated on the extreme low end," and is, and was, misleading, misrepresentative, omits material information and is, and was, factually untrue, in whole and in part.

103.    On or about February 6, 2018, an individual, identifying himself / herself as "Current Employee – Owner," posted a review, entitled "*Ineffective Brand Team*," to the website, as owned and operated by Glassdoor. *Id* at p. 5 (hereinafter the "February 6th Review").

104.    The February 6th Review stated, *inter alia*, as follows:

"The main, and largest con of working here has to be the brand team, and their absolute ineffectiveness in pretty much any aspect of their operation. So where do we start?

\* \* \*

Let's start with the *'web store'*. There a bevy of choices that are available that are user friendly, sleek, efficient, and also interface seamlessly with our *POS program*. The "Brand" has decided to not use any of those choices… There have been suggestions from other owners about a better way of going about all this, but it's been met with either silence or veiled insults.

\* \* \*

*Lack of support*. When we expressed interest in opening up a store, we talked to Suzanne, one of the owners of the company, and we were told about *all the support that we would get from the brand team*…. To add to this, nearly 90% of the Brand team works at the Belmont store. This is especially a problem during busy times of the year when if something comes up that you need to get taken care of immediately, you have to wait because they are all working the floor at the Belmont store. It's very clear that Belmont comes first, and everybody else comes later.

\* \* \*

Let's elaborate on that last point. As I mentioned before, it's blatantly obvious that their [sic] is *no distinction between Craft Beer Stellar (the actual company) and Craft Beer Cellar Belmont*. This can be seen when *Belmont gets (or rather demands) the entire allocation of a rare beer*, despite the fact that there are several other CBC's within several miles of them, and thus shafting them… Need something urgently taken care of or answered anytime during a busy week or month? You're just going to have to wait until it's not busy at Belmont to even get

a response telling you as much, and you'll get your actual answer after the busy season is over.

* * *

In the past year or so, there have been at least 7 people who have left; either through moving on, or being squeezed out by the owners. It's gotten so bad that I don't know who to ask when I need something, or if it's even possible to still get it done with the people they have still working. Instead of helping, or even offering to help, they *pass down arbitrary (and pretty expensive) decrees, with complete disregard of the financial state of many of their stores. They don't seem interested in really fixing anything if it doesn't benefit them or their store's bottom line*, and if you have the audacity to question anything that they do or pass down, then prepare yourself for a barrage of passive aggressive comments and snide remarks.  It's not a question of if that'll happen to you but rather when it'll happen to you."

*Id*. at pp. 5-7. (emphasis added).

105.    The February 6th Review is, and was, false, disparaging and defamatory, particularly regarding the illegal and improper disclosure of trade secrets and confidential and proprietary information regarding that the "web store" and the "POS program," and is, and was, misleading, misrepresentative, omits material information and is, and was, factually untrue, in whole and in part.

106.    The February 6th Review is, and was, false, disparaging and defamatory, particularly regarding the illegal and improper disclosure of trade secrets and confidential and proprietary information regarding that the "web store" and the "POS program," and is, and was, misleading, misrepresentative, omits material information and is, and was, factually untrue, in whole and in part.

107.    The February 6th Review is, and was, false, disparaging and defamatory, particularly regarding the illegal and improper disclosure of trade secrets and confidential and proprietary information regarding that there is "no distinction between Craft Beer Stellar (the actual company) and Craft Beer Cellar Belmont," and is, and was, misleading, misrepresentative, omits material information and is, and was, factually untrue, in whole and in part.

108.     The February 6th Review is, and was, false, disparaging and defamatory, particularly regarding the illegal and improper disclosure of trade secrets and confidential and proprietary information regarding that there is "Belmont gets (or rather demands) the entire allocation of a rare beer," and is, and was, misleading, misrepresentative, omits material information and is, and was, factually untrue, in whole and in part.

109.     The February 6th Review is, and was, false, disparaging and defamatory, particularly regarding the illegal and improper disclosure of trade secrets and confidential and proprietary information regarding that The Brand "pass[es] down arbitrary (and pretty expensive) decrees, with complete disregard of the financial state of many of their stores," and is, and was, misleading, misrepresentative, omits material information and is, and was, factually untrue, in whole and in part.

110.     The February 6th Review is, and was, false, disparaging and defamatory, particularly regarding the illegal and improper disclosure of trade secrets and confidential and proprietary information regarding that The Brand doesn't "seem interested in really fixing anything if it doesn't benefit them or their store's bottom line," and is, and was, misleading, misrepresentative, omits material information and is, and was, factually untrue, in whole and in part.

111.     On or about March 8, 2018, an individual, identifying himself / herself as a "Former Employee – Owner," posted a review, entitled "*Buyer Beware*!!" to the website, as owned and operated by Glassdoor. *Id* at p. 2 (hereinafter the "March 8th Review")(collectively, with the above, hereinafter as the "Reviews").

112.     The March 8th Review stated, *inter alia*, as follows:

"Besides the *economics of the franchisee business which is terrible*, having to deal with Suzanne and her massive ego along with her passive aggressive remarks is enough reason to run away…Do yourself a favor and run away she is not a nice person...Be *more honest with your investors*."

*Id* at pp. 2-3 (emphasis added).

113.    The March 8th Review is, and was, false, disparaging and defamatory, particularly regarding the illegal and improper disclosure of trade secrets and confidential and proprietary information regarding that the "economics of the franchise business … [are] terrible," and is, and was, misleading, misrepresentative, omits material information and is, and was, factually untrue, in whole and in part.

114.    The March 8th Review is, and was, false, disparaging and defamatory, particularly regarding the illegal and improper disclosure of trade secrets and confidential and proprietary information regarding that The Brand is not "honest with … [its] investors," and is, and was, misleading, misrepresentative, omits material information and is, and was, factually untrue, in whole and in part.

115.    Upon information and belief, the Plaintiff contends that the content of the false, disparaging and defamatory Reviews and/or Reposted Review, particularly regarding the illegal and improper disclosure of trade secrets and confidential and proprietary information of The Brand, was developed, at least in part, by the Defendants, in conspiracy and/or by aiding and abetting the John Does.

116.    The Defendants have no lawful authority, and have never been granted lawful authority, by the Plaintiff to determine which, if any, of CBS's trade secrets and confidential and proprietary information are to be disseminated and distributed to the public.

117.    Since in or about 2018, franchisee(s) and/or prospective franchisee(s) have communicated to The Brand regarding the Reviews, as having been posted by the Defendants

and/or John Does on the Glassdoor website, and have noted how the Reviews caused such prospective franchisee(s) to be "spooked," about the false, disparaging and misleading information and content posted in the Reviews.

118.    As a result of the posting, dissemination and distribution of the Reviews, throughout the Commonwealth of Massachusetts, the United States and globally, the Defendants have breached their contractual duties under the Franchise Agreement and other contracts, of confidentiality and non-disclosure.

119.    By the Defendants' fraudulent actions, omissions, fraudulent concealment, policies, procedures, practices, and/or courses of conduct, the Plaintiff has suffered irreparable harm and incurred special damages of hundreds of thousands of dollars and more, and general and consequential damages and injuries in lost franchise fees, royalties, income, fees, costs, attorney's fees, and injuries, and lost reputation and goodwill in the craft beer industry and elsewhere, and other compensation, benefits, and other damages, to its detriment.

**E.    Defendants Unlawfully Terminate Their Franchise and Violate the Confidentiality and Non-Competition Provisions of the Franchise Agreement**

120.    On or about September 29, 2018, the Defendants unlawfully closed the CBC-Gardiner store and terminated and breached the Franchise Agreement.

121.    Upon information and belief, for months, the Defendants have been negotiating and communicating with certain third-parties, seeking to establish a competitive beer establishment at the Water Street location, in direct violation of, inter alia, the non-competition provisions of the Franchise Agreement.

122.    For example, the Defendants have breached, *inter alia*, Section 9.6 of the Franchise Agreement, which provides, in pertinent part, as follows:

> "You will assure each of your owners, shareholders, general partners, members, directors, officers, managers, employees, consultants, distributors, and agents _will not compete with us_; will not attempt to divert customers to competing businesses; …. and will keep, preserve and protect confidential information as required by this Agreement."

_See_ Franchise Agreement (**Exhibit A**), § 9.6, at p. 39 (emphasis added).

123.    Furthermore, Section 9.8(5) of the Franchise Agreement also provides, _inter alia_ and in pertinent part, as follows:

> "You agree that the existence of any claims you may have will not constitute a defense to the enforcement by us of any of the confidentiality requirements and _covenants not to compete_ described in this Agreement. You acknowledge that any violation of the confidentiality and _covenants not to compete would result in irreparable injury to us for which no adequate remedy at law may be available and you accordingly consent to the issuance of an injunction prohibiting any conduct by you in violation of the terms of the covenant not to compete._"

_See_ Franchise Agreement (**Exhibit A**), § 9.8(5), at pp. 43-45 (emphasis added).

124.    Section 9.8(5) of the Franchise Agreement further provided, _inter alia_ and in pertinent part, as follows:

> "You agree that each of the confidentiality requirements and _covenant not to compete_ described in this Agreement _will be constructed as independent of any other covenant_ or provision. If all, part or any portion of this Agreement is held as unreasonable or unenforceable by a court or agency having valid jurisdiction in an unappealed final decision to which we are a party, you expressly agree to be bound by a lesser covenant subsumed within the terms of that covenant that imposes the maximum duty permitted by law, as if the resulting covenant were separately stated in this Agreement. Each of the covenants described in this Agreement is a separate and independent covenant in each of the separate counties and states in the United States in which we transact business. To the extent that any covenant may be determined to be judicially unenforceable in any county or state, that covenant will not be affected with respect to any other county or state. You understand and acknowledge that _we will have the right, in our sole discretion,_ to reduce the scope of any covenants, confidentiality requirements or covenants not to compete set forth in this Agreement that apply to you or to any other of our franchisees. We may do so without your consent, effective immediately upon your receipt of written notice. You

agree that you will comply with any covenant that pertains to you as we so modify it."

*See* Franchise Agreement (**Exhibit A**), § 9.8(5), at pp. 43-45 (emphasis added).

125.     Additionally, Section 9.8(5) of the Franchise Agreement provided, *inter alia* and in pertinent part, as follows:

> "You acknowledge that we will suffer *immediate and irreparable harm* that will not be compensable by damages alone if you repudiate or breach any of the provisions of any part of this Agreement that relates to the confidentiality or protection of confidential information and trade secrets or *your covenants to not compete against us or our franchise system or your threats or attempts to do so*. For this reason, under those circumstances, we, in addition to and without limitation of any other rights, remedies or damages available to us at law or in equity, *will be entitled to obtain temporary, preliminary and permanent injunctions in order to prevent or restrain the breach*, and we will not be required to post a bond as a condition of granting of this relief. You also agree that a violation of *any of your* confidentiality or *non-competition covenants will entitle us, in addition to all other remedies available at law or in equity, to recover from you any and all funds, including without limitation, wages, salary, and profits, which will be held by you in constructive trust* for us, received by you in connection with such violation. You specifically acknowledge the receipt of *adequate consideration* for the confidentiality and *non-competition covenants* contained in this Agreement and that we are entitled to require you to comply with these covenants. Those covenants will survive termination or expiration of this Agreement. You represent that if this Agreement expires or is terminated, whether voluntarily or involuntarily, you have experience and capabilities sufficient to enable you to find employment or otherwise earn a livelihood in areas which do not violate this Agreement and that our enforcement of a remedy by way of an injunction will not prevent you from earing a livelihood."

*See* Franchise Agreement (**Exhibit A**), § 9.8(5), at p. 45  (emphasis added).

126.     The Defendants have caused irreparable harm to the reputation and goodwill of the Plaintiff, and have breached, *inter alia*, Section 9.8(5) of the Agreement provided, *inter alia* and in pertinent part, as follows:

"You recognize the *unique value and secondary meaning attached to the Method of Operation, the Service Marks and our standard of operation and trade practices*. You agree that any noncompliance with the terms of this Agreement or any Unauthorized or improper use of the Method of Operation or the Service Marks will *cause irreparable damage* to us and our franchisees. You agree that if you engage in any *unauthorized or improper use*, during or after the period of this Agreement, we will be entitled to both *permanent and temporary injunctive relief* from any court of competent jurisdiction in addition to any other remedies prescribed by laws."

*See* Franchise Agreement (**Exhibit A**), § 9.8(5), at p. 43 (emphasis added).

127.    Additionally, Section 9.7(5) of the Franchise Agreement provides, in pertinent part, as follows:

"If applicable law implies a covenant of good faith and fair dealing in this Agreement, the parties agree that the covenant will not imply any rights or obligations that are inconsistent with a fair construction of the terms of this Agreement. If applicable law implies such a covenant, the parties acknowledge and agree that:

a)    This Agreement (and the relationship of the parties which is inherent from this Agreement) *grants us discretion to make decisions, take actions or refrain from taking actions not inconsistent with our explicit rights and obligations under this Agreement that may favorably or adversely affect your interests*;

b)    We will use *our business judgment in exercising our discretion* based on our assessment of our own interests and balancing those interests against the interests of the owners of other Craft Beer Cellar businesses generally (including us, our franchisees and parties related to us) and specifically without considering the individual interests of you or any other particular franchise;

c)    *We will have no liability to you for the exercise of our discretion in this manner*, so long as our discretion is not exercised in bad faith toward you; and

d)    In the absence of bad faith, *no trier of fact in any* judicial or *arbitration proceeding will substitute its judgment for business judgment we exercise*."

*See* Franchise Agreement (**Exhibit A**), § 9.7(5), at pp. 40-41 (emphasis added).

128.     Furthermore, Section 9.8(5) of the Franchise Agreement, states, *inter alia* and in pertinent part, as follows:

> "No right or remedy conferred upon us is exclusive of any other right or remedy in this Agreement or provided by law or equity. Each will be cumulative of every other right or remedy. *We may employ legal counsel or incur other expense to collect or enforce your obligations or to defend against any claim, demand, action or proceeding because of your failure to perform your obligations.* Legal action may be filed by or against us and that action or the settlement of it may establish your breach of this Agreement. If either event occurs, we may recover from you the amount of our reasonable attorney's fees and all other expenses we incur in collecting or enforcing that obligation or in defending against that claim, demand, action or proceeding."

*See* Franchise Agreement (**Exhibit A**), § 9.8(5), at p. 43 (emphasis added).

129.     In sum, the Defendants have breached their contract with the Plaintiff, have unjustly enriched Defendants CBC-Gardiner and Callinan, and are violating, and/or seeking to violate, the confidentiality and non-competition provisions of the Franchise Agreement, thereby causing confusion to customers, and potential customers, of The Brand.  The Defendants have unlawfully terminated the Franchise Agreement, committed unfair and deceptive trade practices, and have caused harm, injury and damages to The Brand and damaged its reputation and its goodwill, forcing the Plaintiff to incur costs and attorneys' fees.

130.     Moreover and in sum, the Defendants have committed unfair and deceptive trade practices, anti-competitive acts, and/or conspired with and/or aided and abetted the unfair and deceptive trade practices, anti-competitive acts and civil conspiracy of the John Does, by the unlawful posting, dissemination and distribution of the false, disparaging and misleading Reviews, as posted on Glassdoor's website, and throughout the Commonwealth of Massachusetts, the United States and globally, in breach of their contractual duties under the Franchise Agreements and other contracts, of confidentiality and non-disclosure, and their fraudulent actions, omissions,

fraudulent concealment, policies, procedures, practices, and/or courses of conduct, causing the Plaintiff to suffer irreparable harm and incur special damages exceeding $75,000.00, and general and consequential damages and injuries of hundreds of thousands of dollars in lost franchise fees, royalties, income, fees, costs, attorney's fees, and injuries, and lost reputation and goodwill in the craft beer industry and elsewhere, and other compensation, benefits, and other damages, to its detriment.

## V.  **VIOLATIONS OF LAW**

**COUNT I – VIOLATION OF 18 U.S.C. § 1836(b)(1)**
**(DEFEND TRADE SECRETS ACT)**
**(as to Defendants CBC-Gardiner, Callinan and John Does 1-20)**

131.    The Plaintiff reasserts Paragraphs 1 through 130 of the Complaint, together with **Exhibits**, and restates and incorporates them herein by reference.

132.    Upon information and belief and by their own respective posts, the Defendants CBC-Gardiner, Callinan and John Does 1-20 are current or former franchisees and/or employees of the Plaintiff.

133.    Upon information and belief and by their own respective posts, the Defendants CBC-Gardiner, Callinan and John Does 1-20 have, and/or have had, a duty of loyalty, and a continuing duty of loyalty to protect and maintain the confidential and proprietary information, as owned by Craft Beer Stellar, LLC.

134.    Upon information and belief and by their own respective posts, the Defendants CBC-Gardiner, Callinan and John Does 1-20 have, and/or have had, a contractual duty, and a continuing contractual duty, to protect and maintain the confidential and proprietary information, as owned by Craft Beer Stellar, LLC.

135.     The Defendants CBC-Gardiner, Callinan and John Does posted, conspired with and/or aided and abetted the posting of the Plaintiff's confidential and proprietary information, which included but was not limited to, *inter alia,* information regarding sales projections, costs, margins, franchisee store value, and content as to method of operations, as exclusively owned by the Plaintiff, Craft Beer Stellar, LLC.

136.     The Plaintiff has derived independent economic value from the information being kept from the general public, and has taken measures to preserve this confidentiality, as can be seen in the standard language in their Franchise Agreements.

137.     The Plaintiff further required that all communications, based upon, derived from and/or relating to, such confidential and/or proprietary information of The Brand, be disseminated and distributed through the secure third-party system, known as "Basecamp."

138.     At all relevant times, Plaintiff Craft Beer Stellar, LLC has been operating as a franchisor, with franchises operating in multiple states, including in the Commonwealth of Massachusetts.

139.     By their respective posts, Defendants CBC-Gardiner, Callinan and John Does 1-20 have breached, and continue to breach, their duty of loyalty to protect and maintain the confidential and proprietary information, as owned by Craft Beer Stellar, LLC, in violation of the Defend Trade Secrets Act, 18 U.S.C. § 1836(b)(1).

140.     By their respective posts, Defendants CBC-Gardiner, Callinan and John Does 1-20 have breached, and continue to breach, their contractual duty to protect and maintain the confidential and proprietary information, as owned by Craft Beer Stellar, LLC, in violation of the Defend Trade Secrets Act, 18 U.S.C. § 1836(b)(1).

141.    As a direct and proximate cause of the Defendants' violation of the Defend Trade Secrets Act, 18 U.S.C. § 1836(b)(1), the Plaintiff has suffered irreparable harm, and general, special and consequential damages, exceeding $5,000.00 and exceeding $75,000.00, and injuries and losses, including but not limited to franchise fees, royalties, income, fees, costs, attorney's fees, and injuries, and lost reputation in the craft beer industry and elsewhere, and other compensation, benefits, and other damages, to its detriment.

**COUNT II – VIOLATION OF 18 U.S.C. § 1030(g)**
**(COMPUTER FRAUD AND ABUSE ACT)**
**(as to Defendants CBC-Gardiner, Callinan and Defendants John Does 1-20)**

142.    The Plaintiff reasserts Paragraphs 1 through 141 of the Complaint, together with **Exhibits**, and restates and incorporates them herein by reference.

143.    Upon information and belief and by their own respective posts, Defendants CBC-Gardiner, Callinan and John Does 1-20 are current or former franchisees and/or employees of the Plaintiff.

144.    Upon information and belief and by their own respective posts, the Defendants CBC-Gardiner, Callinan and John Does 1-20 voluntarily entered into a contract and engagement with the Plaintiff, Craft Beer Stellar, LLC, which established and created, as a matter of law, a duty of loyalty by Defendants CBC-Gardiner, Callinan and John Does to protect and maintain the trade secrets, confidential and proprietary information of the Plaintiff.

145.    Upon information and belief and by their own respective posts, the Defendants CBC-Gardiner, Callinan and John Does 1-20 voluntarily entered into a Franchise Agreement with CBS, creating a contractual duty and/or continuing contractual duty, to the Plaintiff, Craft Beer Stellar, LLC, which provided, in pertinent part, as follows:

"You specifically acknowledge that you will receive valuable specialized and confidential information…Unless required by court order or applicable law, you agree not to copy, download to internet, intranet, modem, fax, e-mail, mail or send any confidential material or divulge any material directly or indirectly to any other person or enterprise outside of the Craft Beer Cellar system."

*See* **Exhibit A**.

146.    Upon information and belief and by their own respective posts, the Defendants CBC-Gardiner, Callinan and John Does 1-20 have, and/or had, gained access to the databases, computers and electronic systems, including but not limited to Basecamp, of the Plaintiff, such access granted by The Brand under a duty of loyalty, and a continuing access granted under the continued duty of loyalty to protect and maintain the trade secrets, confidential and proprietary information, as owned by Craft Beer Stellar, LLC.

147.    At all relevant times, the Plaintiff required that any and all communications between and among the franchisor and/or the franchisees, based upon, derived from and/or relating to, such confidential and/or proprietary information of The Brand, be disseminated and distributed through the secure third-party system, Basecamp.

148.    The Defendants posted, and/or reposted, the Plaintiff's trade secrets, confidential and proprietary information which included but was not limited to, *inter alia,* information regarding sales projections, costs, margins, franchisee store value, and content as to method of operations, as exclusively owned by the Plaintiff, Craft Beer Stellar, LLC.

149.    The Plaintiff derived independent economic value from the information being kept from the general public, and took measures to preserve this confidentiality, as can be seen in the language taken from the Franchise Agreement. *See generally,* **Exhibits A & B**.

150.    At all relevant times, Plaintiff Craft Beer Stellar, LLC has been operating as a franchisor, with franchises operating in multiple states, including in the Commonwealth of Massachusetts.

151.    At all relevant times, the Defendants CBC-Gardiner, Callinan and John Does 1-20 knowingly, willfully, wantonly, and with the intent to defraud CBS with actual malice, accessed the Plaintiff's trade secrets and proprietary and confidential information stored and secured on its protected third-party database.

152.    At all relevant times, the Defendants CBC-Gardiner, Callinan and John Does 1-20 knowingly, willfully, wantonly, and with the intent to defraud The Brand with actual malice, used, disclosed and misappropriated confidential and proprietary information belonging to the Plaintiff, to deliberately cause irreparable harm to the business reputation and goodwill of Craft Beer Stellar, LLC, thus breaching their respective duty of loyalty and/or their respective contractual duty to the Plaintiff.

153.    At all relevant times, the Defendants CBC-Gardiner, Callinan and John Does 1-20 knowingly, willfully, wantonly, and with the intent to defraud The Brand with actual malice, exceeded their authorized access to the Plaintiff's protected electronic systems, computers and databases, including but not limited to Basecamp.

154.    By their respective posts, the Defendants CBC-Gardiner, Callinan and John Does 1-20 knowingly, willfully, wantonly, and with the intent to defraud The Brand with actual malice, exceeded their authorized access to the Plaintiff's protected electronic systems, computers and databases, including but not limited to Basecamp, and have breached, and continue to breach, their duty of loyalty to protect and maintain the confidential and proprietary information, as owned by Craft Beer Stellar, LLC, in violation of the Computer Fraud and Abuse Act, 18 U.S.C. § 1030(g).

155.     By their respective posts, the Defendants CBC-Gardiner, Callinan and John Does 1-20 knowingly, willfully, wantonly, and with the intent to defraud The Brand with actual malice, exceeded their authorized access to the Plaintiff's protected electronic systems, computers and databases, including but not limited to Basecamp, have breached, and continue to breach, their contractual duty to protect and maintain the confidential and proprietary information, as owned by Craft Beer Stellar, LLC, in violation of the Computer Fraud and Abuse Act, 18 U.S.C. § 1030(g).

156.     As a direct and proximate cause of the Defendants' violation of the Computer Fraud and Abuse Act, 18 U.S.C. § 1030(g), the Plaintiff has suffered irreparable harm, and general, special and consequential damages, exceeding $5,000.00 and exceeding $75,000.00, and injuries and losses, including but not limited to franchise fees, royalties, income, fees, costs, attorney's fees, and injuries, and lost reputation in the craft beer industry and elsewhere, and other compensation, benefits, and other damages, to its detriment.

### COUNT III – BREACH OF CONTRACT
### (as to Defendants CBC-Gardiner, Callinan and John Does 1-20)

157.     The Plaintiff reasserts Paragraphs 1 through 156 of the Complaint, together with **Exhibits**, and restates and incorporates them herein by reference.

158.     A breach of contract is a failure, without excuse, to perform a duty which is due under the contract.  Additionally, the interpretation of a contract is a question of law, not fact.  If the wording of the contract is not ambiguous, then the contract must be enforced according to its terms.

159.     In or about April 2015, the Plaintiff and the Defendants entered into the Franchise Agreement.  In the Franchise Agreement, the Parties had agreed to abide by the terms and reasonable expectations of the Parties, and as to the terms under which access to and use of the Plaintiff's trade secrets, confidential and proprietary information would be provided to the

Defendants.

160.    By the Franchise Agreement, the Plaintiff contracted with the Defendants to provide a craft beer franchise to Defendants, and provide, in good faith, assistance and support towards the ownership and operation of their craft beer franchise.

161.    The Plaintiff performed its obligations under the Franchise Agreements with Defendant Does and in accordance with the FA and consistent with reasonable expectations of the Parties, and such policies, practices and procedures, in the good faith.

162.    Pursuant to the Franchise Agreements, The Brand invested time, effort, resources, man hours and expertise in the business of the Defendants, to assist in their goals of becoming a successful Craft Beer Cellar franchise.

163.    Section 1.2 of the Franchise Agreement with the Defendants provides that, the Callinan "*are responsible for selecting the site for the Franchise Premises within the designated area….*" *See* Franchise Agreement (**Exhibit A**), § 1.2, at p. 3 (emphasis added).

164.    Section 1.3 of the Franchise Agreement with the Defendants, which provides that, "… We [the Franchisor] ***will not be liable*** for ***any consequences*** *of your choice of any franchise site*." *See* Franchise Agreement (**Exhibit A**), § 1.3, at p. 3 (emphasis added).

165.    Section 1.3 of the Franchise Agreement with the Defendants also provides that, "…Any site recommendation or *approval we [the Plaintiff] make[s]* is ***not a representation*** that any particular site is available *or legally appropriate for use as a franchise site*…." *See* Franchise Agreement (**Exhibit A**), § 1.3, at p. 3 (emphasis added).

166.    Section 1.3 of the Franchise Agreement with the Defendants, which provides that, "… We [The Franchisor] *will have no liability* with respect to the selection *or approval of a*

*location* or any lease for the Premises, *nor liability with respect to any site recommendations we make*." *See* Franchise Agreement (**Exhibit A**), § 1.3, at p. 3 (emphasis added).

167.    Section 1.5 of the Franchise Agreement, which provides, in pertinent part, as follows: "You may decide to relocate the Franchise for the following reasons:  -- in your and our judgment there is a *change in the character* of the location of the Franchise *sufficiently detrimental to your business potential to warrant its relocation*, …." *See* Franchise Agreement (**Exhibit A**), § 1.5, at p. 4 (emphasis added).

168.    Section 1.5 of the Franchise Agreement also provides, in pertinent part, as follows: "You may decide to relocate the Franchise for the following reasons:  * * * * * -- you *reasonably* decide to relocate the Franchise *for cause*." *See* Franchise Agreement (**Exhibit A**), § 1.5, at p. 4 (emphasis added).

169.    Section 2.1 of the Franchise Agreement with the Defendants provides that, "*None of the Initial Franchise Fee is refundable*." *See* Franchise Agreement (**Exhibit A**), § 2.1, at p. 5 (emphasis added).

170.    By their conduct and unlawful termination of the Agreement, the Defendants have breached, *inter alia*, the following provisions of the Franchise Agreement: Section 2.2 (Monthly Royalty Fee); Sections 2.3(A), 2.3(B) & 2.3(I) (Advertisement Standards); Section 2.6 (Royalty Fees and Other Sums to be Paid Monthly); Section 2.7 (Records); Section 2.8 (Audits); Section 2.9 (You are to pay All Franchise Costs); and Section 2.11 (Application of Payments). *See* Franchise Agreement (**Exhibit A)**, §§ 2.2, 2.3(A), 2.3(B), 2.3(I), 2.6, 2.7, 2.8, 2.9 & 2.11.

171.    By their conduct and unlawful termination of the Agreement, the Defendants have breached Section 6.2 of the Franchise Agreement, which provides as follows:

"You may terminate this Agreement *if you comply with the terms of this Agreement* and if we substantially breach any material provision of this Agreement and fail to cure or reasonably begin to cure that breach within 60 days after receipt of written notice specifying the breach. Termination *will be effective 10 days* after you deliver to us written notice of termination for our failure to cure within the allowed period."

*See* Franchise Agreement (**Exhibit A**), § 6.2, at p. 23 (emphasis added).

172.     The Plaintiff provided sufficient and valuable consideration for the Agreement to the Defendants.

173.     By their conduct and unlawful termination of the Agreement, the Defendants have breached Section 9.14(7) of the Franchise Agreement, which provides as follows:

"You acknowledge that we will not provide or designate locations for you…."

*See* Franchise Agreement (**Exhibit A**), § 9.14(7), at pp. 49-50 (emphasis added).

174.     Pursuant to the Franchise Agreements, the Defendants and the John Does have, and have had, a contractual obligation to protect and maintain, the confidential and proprietary information of Craft Beer Stellar, LLC.

175.     Pursuant to the Franchise Agreements, the Defendant and the John Does have, and have had, a contractual obligation not to publicly disseminate and/or distribute, to third-parties, the confidential and proprietary information of Craft Beer Stellar, LLC. *See* **Exhibits A & B**.

176.     Upon information and belief and by their own respective Glassdoor posts, the Defendants and/or the John Does 1-20 are current and/or former franchisees of the Plaintiff, Craft Beer Stellar, LLC.

177.     Based on the above, including the acts, omissions, and conduct set forth above, the Defendants and the John Does 1-20 knew, or should have known, that the Reviews, as posted on the Glassdoor website, were in breach of the Franchise Agreements and the Plaintiff's policies, practices and procedures.

178. The Defendants and the John Does, by their conduct as described herein, breached its contract with the Plaintiff.

179. As a direct and proximate cause of the Defendants' breaches of contract, the Plaintiff has irreparable harm, and suffered general, special, and consequential damages, including, but not limited to, loss of revenues, profits, benefits, business opportunities and reputation, and other damages, injuries, and losses, to its detriment, and which resulted in the unjust enrichment of the Defendants.

### COUNT IV - BREACH OF CONTRACT / UNLAWFUL COMPETITION AND VIOLATION OF NON-COMPETITION PROVISIONS (as to Defendants CBC-Gardiner and Callinan)

180. The Plaintiff reasserts Paragraphs 1 through 179 of the Complaint, together with **Exhibits**, and restates and incorporates them herein by reference.

181. By the Franchise Agreement, the Plaintiff contracted with the Defendants to provide a craft beer franchise to Defendants John and Jessica, and provide, in good faith, assistance and support towards the ownership and operation of their craft beer franchise.

182. The Plaintiff provided sufficient and valuable consideration for the Agreement to the Defendants.

183. Defendants Callinan and CBC-Gardiner have terminated the franchise, and are operating, and/or seeking to operate a competitive beer establishment at 339 Water Street, Gardiner, Maine, in violation of the non-competition and other provisions of the Agreement, which has been unjustly enriched thereby.

184. By their conduct and unlawful termination of the Agreement, the Defendants have breached Section 4.3, after the termination or expiration of the Franchise Agreement. *See* Franchise Agreement (**Exhibit A**), § 4.3, at pp. 11-12.

185.     By their conduct and unlawful termination of the Agreement, the Defendants have breached, *inter alia*, the following provisions of the Franchise Agreement:  Section 5 (Franchise Standards of Operation), including, without limitation: Section 5.1 (Operations Manual, Equipment, Plans and Specifications, and Public Relations); Section 5.2 (Standards to be Maintained); Section 5.3 (Service Marks, Operations Manual, Methods of Operation Are Our Exclusive Property); Section 5.4 (You will Not Use Names or Marks in Combination); Section 5.5 (Service Marks, Operation Manual, and Method of Operation May Be Changed); Section 5.7 (Alteration of Franchise); and Section 5.9 (You Will Not Communicate Confidential Information). *See* Franchise Agreement (**Exhibit A**), §§ 5, 5.1, 5.2, 5.3, 5.4, 5.5, 5.7 & 5.9.

186.     By their conduct and unlawful termination of the Agreement, the Defendants are unlawfully competing with The Brand and its franchisees, in violation of Section 5.10 of the Franchise Agreement, which provides, in pertinent part:

> You will assure that you and your owners, directors, officers, partners, shareholders, members, employees, consultants, and agents, during the term of this Agreement and *for a period of 2 years after expiration or termination of this Agreement do not*:
>
> 1.     *divert or directly or indirectly attempt to divert any of our business or any of our customers to a competing establishment*;
>
> * * * * *
>
> 2.     do or perform, directly or indirectly, any other act injurious or prejudicial to our goodwill associated with the Service Marks and Method of Operation.
>
> If, for any reason, any provision set forth in this subsection is determined to exceed any lawful scope or limit as to duration, geographic coverage, or otherwise, it is agreed that the provision will nevertheless be binding to the full scope or limit allowed by law or by a court of law. The duration, geographic coverage, and scope allowable by law or court of law shall apply to this Agreement.
>
> You will obtain written covenants from your owners, shareholders, members, partners, directors, officers, employees, consultants, distributors, and agents in a

form satisfactory to us that these persons will comply with the provisions of this Section.

You and we stipulate that, in light of all of the facts and circumstances of the relationship between you and us, the *covenants, restrictions and agreements* referred to in this Section (including without limitation their *scope, duration and geographic extent*) are *fair and reasonably necessary for the protection of our confidential information, goodwill and other protectable interests*. If a court of competent jurisdiction should decline to enforce any of those covenants and agreements, you and we request the court to reform these provisions to restrict your use of confidential information, non-solicitation, *ability to compete with us*, and any other covered topics to the *maximum extent, in time, scope of activities, and geography, the court finds enforceable under applicable law*.

*See* Franchise Agreement (**Exhibit A**), § 5.10, at pp. 20-21 (emphasis added).

187.  By their conduct and unlawful termination of the Agreement, the Defendants are unlawfully competing with The Brand and its franchisees, in violation of Section 9.6 of the Franchise Agreement, which provides, in pertinent part:

> "You will assure each of your owners, shareholders, general partners, members, directors, officers, managers, employees, consultants, distributors, and agents *will not compete with us*; will not attempt to divert customers to competing businesses; …. and will keep, preserve and protect confidential information as required by this Agreement."

*See* Franchise Agreement (**Exhibit A**), § 9.6, at p. 39 (emphasis added).

188.  By their conduct and unlawful termination of the Agreement, the Defendants are unlawfully competing with The Brand and its franchisees, in violation of Section 9.8(5) of the Franchise Agreement, which provides, in pertinent part:

> "You acknowledge that we will suffer immediate and irreparable harm that will not be compensable by damages alone if you repudiate or breach any of the provisions of any part of this Agreement that relates to the confidentiality or protection of confidential information and trade secrets or your *covenants to not compete against us or our franchise system or your threats or attempts to do so*. For this reason, under those circumstances, we, in addition to and without limitation of any other rights, remedies or damages available to us at law or in equity, will be entitled to obtain temporary, preliminary and permanent injunctions in order to prevent or restrain the breach, and we will not be required to post a bond as a condition of granting of this relief. *You also agree that a violation of any of your confidentiality*

*or non-competition covenants will entitle us, in addition to all other remedies available at law or in equity, to recover from you any and all funds*, including without limitation, wages, salary, and profits, which *will be held by you in constructive trust* for us, received by you in connection with such violation. You specifically acknowledge the receipt *of adequate consideration* for the *confidentiality and non-competition covenants* contained in this Agreement and that we are entitled to require you to comply with these covenants. *Those covenants will survive termination or expiration of this Agreement*. You represent that if this Agreement expires or is terminated, whether voluntarily or involuntarily, you have experience and capabilities sufficient to enable you to find employment or otherwise earn a livelihood in areas which do not violate this Agreement and that our enforcement of a remedy by way of an injunction will not prevent you from earning a livelihood."

*See* Franchise Agreement (**Exhibit A**), § 9.8(5), at pp. 43-44 (emphasis added).

189.    By their conduct and unlawful termination of the Agreement, the Defendants are

unlawfully competing, and/or seeking to unlawfully compete, with The Brand and its franchisees,

in violation of Section 9.8(5) of the Franchise Agreement, which provides, in pertinent part:

"You agree that each of the confidentiality requirements and covenant not to compete described in this Agreement will be constructed as independent of any other covenant or provision. If all, part or any portion of this Agreement is held as unreasonable or unenforceable by a court or agency having valid jurisdiction in an unappealed final decision to which we are a party, *you expressly agree to be bound by a lesser covenant* subsumed within the terms of that covenant that imposes the maximum duty permitted by law, as if the resulting covenant were separately stated in this Agreement. Each of the covenants described in this Agreement is a separate and independent covenant in each of the separate counties and states in the United States in which we transact business. To the extent that any covenant may be determined to be judicially unenforceable in any county or state, that covenant will not be affected with respect to any other county or state. You understand and acknowledge that *we will have the right, in our sole discretion*, to reduce the scope of any covenants, confidentiality requirements or *covenants not to compete set forth in this Agreement that apply to you* or to any other of our franchisees. We may do so without your consent, effective immediately upon your receipt of written notice. *You agree that you will comply with any covenant that pertains to you as we so modify it*."

*See* Franchise Agreement (**Exhibit A**), § 9.8(5), at pp. 43-44 (emphasis added).

190.    By their conduct and unlawful termination of the Agreement, the Defendants are unlawfully competing, and/or seeking to unlawfully compete, with The Brand and its franchisees, in violation of Section 9.8(5) of the Franchise Agreement, which provides, in pertinent part:

> "No right or remedy conferred upon us is exclusive of any other right or remedy in this Agreement or provided by law or equity. Each will be cumulative of every other right or remedy. We may employ legal counsel or incur other expense to collect or enforce your obligations or to defend against any claim, demand, action or proceeding because of your failure to perform your obligations. Legal action may be filed by or against us and that action or the settlement of it may establish your breach of this Agreement. If either event occurs, we may recover from you the amount of our reasonable attorney's fees and all other expenses we incur in collecting or enforcing that obligation or in defending against that claim, demand, action or proceeding."

*See* Franchise Agreement (**Exhibit A**), § 9.8(5), at pp. 43-44 (emphasis added).

191.    The Defendants, by their conduct as described herein, breached their contract with the Plaintiff.

192.    By its conduct and the conduct of John and Jessica, Defendants have been improperly and unjustly enriched, and unlawfully operated in violation of the non-competition provisions of the Agreement.

193.    The Plaintiff has suffered irreparable harm by the violations of the non-competition provisions by the Defendants and the breaches of contract, and seeking temporary, preliminary and permanent injunctive relief and requiring the enforcement of the non-competition provision of the Agreement, as required.

194.    As a direct and proximate cause of the Defendants' breaches of contract, the Plaintiff has suffered irreparable harm, and general, special and consequential damages, exceeding $5,000.00 and exceeding $75,000.00, and injuries and losses, including but not limited to franchise fees, royalties, income, fees, costs, attorney's fees, and injuries, and lost reputation and goodwill

in the craft beer industry and elsewhere, and other compensation, benefits, and other damages, to

its detriment.

## COUNT V – BREACHES OF IMPLIED
## COVENANT OF GOOD FAITH-FAIR DEALING
## (as to Defendants CBC-Gardiner, Callinan and John Does 1-20)

195.    The Plaintiff reasserts Paragraphs 1 through 194 of the Complaint, together with

**Exhibits**, and restates and incorporates them herein by reference.

196.    It is well established in that every contract carries an implied covenant of good faith

and fair dealing whereby the parties treat each other fairly and act in good faith and no party to the

contract shall take any action to harm another party's rights under the contract. The duty imposed

by this "implied covenant of good faith and fair dealing" pertains to bad faith in the performance

of a contract, not just in its execution or negotiation. Implicit in every contract is the requirement

on faithfulness to an agreed upon common purpose and consistency with the justified expectations

of the other party.

197.    A breach of contract is the failure to perform for which legal excuse is lacking. As

a matter of law, a contract existed, which the Defendant Does breached and failed to comply with

the covenant of good faith and fair dealing. The law is clear - the John Does had a binding contract

and the Defendants have no legal basis, as a matter of law, to avoid their obligations under their

Franchise Agreements.

198.    The Defendants had a duty of good faith and fair dealing in their dealings with the

Plaintiff and pursuant to the promises, contract, and statements made to the Plaintiff to induce it

to enter into the contract and provide assets to the Defendants in exchange for its comply with the

Franchise Agreement and become franchisees, in good faith.

199.    Under the covenant, the Defendants were obligated to the good faith performance of their obligations under the Franchise Agreements with the Plaintiff, and to be faithful and consistent to the justified expectations of The Brand.

200.    As described above, the Defendants breached the implied covenant of good faith and fair dealing with the Plaintiff.

201.    As a direct and proximate cause of the Defendants Does' breaches of the implied covenant of good faith and fair dealing, the Plaintiff has suffered irreparable harm, and general, special and consequential damages, exceeding $5,000.00 and exceeding $75,000.00, and injuries and losses, including but not limited to franchise fees, royalties, income, fees, costs, attorney's fees, and injuries, and lost reputation and goodwill in the craft beer industry and elsewhere, and other compensation, benefits, and other damages, to its detriment.

## COUNT VI - UNJUST ENRICHMENT
### (as to Defendants CBC-Gardiner, Callinan and John Does 1-20)

202.    The Plaintiff reasserts Paragraphs 1 through 201 of the Complaint, together with **Exhibits**, and restates and incorporates them herein by reference.

203.    The Defendants have illegally benefitted from the intellectual property, Service Marks and Method of Operation of the Plaintiff, and the time, skills, effort and expertise of the Plaintiff and its senior managers, provided by CBS in detrimental reliance upon the Defendants' compliance with the Franchise Agreement.

204.    The Defendants' actions, courses of conduct and omissions were wantonly, intentionally and maliciously conducted against the Plaintiff, to its detriment.

205.    The Defendants have been unjustly enriched by its actions, as described herein.

206.    As a direct and proximate cause of the Defendants' unjust enrichment, the Plaintiff has suffered irreparable harm, and general, special and consequential damages, exceeding

$5,000.00 and exceeding $75,000.00, and injuries and losses, including but not limited to franchise fees, royalties, income, fees, costs, attorney's fees, and injuries, and lost reputation and goodwill in the craft beer industry and elsewhere, and other compensation, benefits, and other damages, to its detriment.

## COUNT VII – PROMISSORY ESTOPPEL / DETRIMENTAL RELIANCE
### (Against Defendants CBC-Gardiner, Callinan and John Does 1-20)

207.    The Plaintiff reasserts Paragraphs 1 through 206 of the Complaint, together with **Exhibits**, and restates and incorporates them herein by reference.

208.    By engaging in the conduct described herein, the Defendants breached their promises and assurances to the Plaintiff to perform in accordance with the Franchise Agreement.

209.    The Plaintiff reasonably relied, to its detriment, on the Defendants' promises and assurances.

210.    As a direct and proximate cause of the Defendants' promissory estoppel, the Plaintiff has suffered irreparable harm, and general, special and consequential damages, exceeding $5,000.00 and exceeding $75,000.00, and injuries and losses, including but not limited to franchise fees, royalties, income, fees, costs, attorney's fees, and injuries, and lost reputation and goodwill in the craft beer industry and elsewhere, and other compensation, benefits, and other damages, to its detriment.

## COUNT VIII – DEFAMATION
### (as to Defendants CBC-Gardiner, Callinan and John Does 1-20)

211.    The Plaintiff reasserts Paragraphs 1 through 210 of the Complaint, together with **Exhibits**, and restates and incorporates them herein by reference.

212.    The Defendants have publicly disseminated and distributed, to third-parties, the Reviews  and posts on the Glassdoor website, which statements are false and untrue, and defamed and disparaged Craft Beer Stellar, LLC.

213.    By placing the statements on the Glassdoor.com website available to the public, Defendants have publicly disseminated and distributed and defamatory statements to a wide range of persons in the Commonwealth of Massachusetts, the United States and globally.

214.    The Defendants have publicly disseminated and distributed the false and defamatory statements with the knowledge that the statements were false, or with reckless disregard as to the falsity of the statements.

215.    The Defendants have publicly disseminated and distributed the false and defamatory statements about Craft Beer Stellar negligently, causing it to suffer irreparable harm, loss of reputation and goodwill, and damages, including loss of revenue, lost profits and injury to its reputation.

216.    As a direct and proximate cause of the Defendants' defamation, the Plaintiff has suffered irreparable harm, and general, special and consequential damages, exceeding $5,000.00 and exceeding $75,000.00, and injuries and losses, including but not limited to franchise fees, royalties, income, fees, costs, attorney's fees, and injuries, and lost reputation and goodwill in the craft beer industry and elsewhere, and other compensation, benefits, and other damages, to its detriment.

## COUNT IX – COMMERCIAL (TRADE) DISPARAGEMENT
### (as to Defendants CBC-Gardiner, Callinan and John Does 1 – 20)

217.    The Plaintiff reasserts Paragraphs 1 through 216 of the Complaint, together with **Exhibits**, and restates and incorporates them herein by reference.

218.    The Defendants publicly disseminated and distributed the false and disparaging statements with the knowledge that the statements were false, or with reckless disregard as to the falsity of the statements.

219.    The Defendants' false and disparaging statements about Craft Beer Stellar, LLC deceive, and have deceived, current and/or potential persons and entities in the craft beer industry, including but not limited current and prospective franchisees, vendors, brewers, distributors, customers, and others, which are, and were, misleading, misrepresentative, omitted material information and are, and were, factually untrue, in whole and in part.

220.    By posting the Reviews on Glassdoor website, the Defendants have publicly disseminated and distributed  defamatory statements to a wide range of persons and entities in the craft beer industry and throughout the Commonwealth of Massachusetts, the United States and globally.

221.    The Defendants intentionally, knowingly, willfully, wantonly, recklessly and/or negligently publicly disseminated and distributed the false and disparaging statement concerning Craft Beer Stellar, LLC's business, senior management, operations, finances franchise model and method of business operation, causing potential franchisees, brewers, vendors, distributors, customers and others to regard the Plaintiff as dishonest, imputing deceit and reprehensible conduct to The Brand.

222.    The Defendants intentionally, knowingly, willfully, wantonly, recklessly and/or negligently publicly disseminated and distributed the false and disparaging statement concerning the Plaintiff's business, senior management, operations, finances franchise model and method of business operation franchise model and method of business operation, causing CBS to suffer

special and general damages, including the monetary loss of a potential franchisees, and injury to the reputation to Craft Beer Stellar, and Craft Beer Cellar franchise locations

223.    As a direct and proximate cause of the Defendants' commercial (trade) disparagement, the Plaintiff has suffered irreparable harm, and general, special and consequential damages, exceeding $5,000.00 and exceeding $75,000.00, and injuries and losses, including but not limited to franchise fees, royalties, income, fees, costs, attorney's fees, and injuries, and lost reputation and goodwill in the craft beer industry and elsewhere, and other compensation, benefits, and other damages, to its detriment.

## COUNT X – TORTIOUS INTERFERENCE
## WITH PROSPECTIVE BUSINESS RELATIONS
## (as to Defendants CBC-Gardiner, Callinan and John Does 1 – 20)

224.    The Plaintiff reasserts Paragraphs 1 through 223 of the Complaint, together with **Exhibits**, and restates and incorporates them herein by reference.

225.    The Plaintiff has, and has had, business relationships and prospective business relationships with a number of potential new franchisees, and with brewers, vendors, distributors, customers and others in the craft beer industry.

226.    These prospective business relationships, including but not limited to prospective franchisees, provide franchise fees, royalties, fees and future economic benefit to the Plaintiff.

227.    The Defendant knew, or should have known, of the Plaintiff's business relationships and prospective business relationships and intentionally induced or caused the prospective business relationships, including but not limited to potential franchisees, not to enter into, or continue, pursuing their business relationship and/or prospective business relationship.

228.    The Defendants knew, or should have known, about the Plaintiff's business relationships and/or prospective business relationships and intentionally, knowingly, willfully,

wantonly and/or recklessly, prevented the Plaintiff from acquiring or continuing the prospective relationship.

229.    The Defendants' interference with the Plaintiff's business relationships and/or prospective business relationships, in addition to being intentional, knowing, willful, wanton and/or reckless, was improper in motive or means.

230.    As a direct and proximate cause of the Defendants' tortious interference with its business relationships and/or prospective business relationships, the Plaintiff has suffered irreparable harm, and general, special and consequential damages, exceeding $5,000.00 and exceeding $75,000.00, and injuries and losses, including but not limited to franchise fees, royalties, income, fees, costs, attorney's fees, and injuries, and lost reputation in the craft beer industry and elsewhere, and other compensation, benefits, and other damages, to its detriment.

## COUNT XI  - FRAUD AND DECEIT
### (as to Defendants CBC-Gardiner, Callinan and John Does 1 – 20)

231.    The Plaintiff reasserts Paragraphs 1 through 230 of the Complaint, together with **Exhibits**, and restates and incorporates them herein by reference.

232.    The actions of the Defendants, as described herein, constitute fraud and deceit, including but not limited to fraudulent inducement to enter into the Franchise Agreements without intending to honor such Agreements, the following:

a)    the Defendants made false representations of material facts, and/or omitted material facts with a duty of disclosure, knowing or having reason to know of their falsity;

b)    the Defendants made said misrepresentations and omissions for the purpose of inducing reliance from the Plaintiff; and

     c)       the Plaintiff did rely upon said misrepresentations and omissions, to its detriment.

233.    As a direct and proximate cause of the Defendants Does' fraud and deceit, the Plaintiff has suffered irreparable harm, and general, special and consequential damages, exceeding $5,000.00 and exceeding $75,000.00, and injuries and losses, including but not limited to franchise fees, royalties, income, fees, costs, attorney's fees, and injuries, and lost reputation and goodwill in the craft beer industry and elsewhere, and other compensation, benefits, and other damages, to its detriment.

### COUNT XII  - NEGLIGENT MISREPRESENTATION
### (as to Defendants CBC-Gardiner, Callinan and John Does 1 – 20)

234.    The Plaintiff reasserts Paragraphs 1 through 233 of the Complaint, together with **Exhibits**, and restates and incorporates them herein by reference.

235.    The conduct of the Defendants, as described herein, constitutes negligent misrepresentation in that the Defendants negligently provided the Plaintiff with erroneous and misleading information, including but not limited to, inducement to enter into the Franchise Agreements without intending to honor such Agreements, and negligently omitted material information with a duty to disclose, to the Plaintiff's detriment.

236.    As a direct and proximate cause of the Defendants Does' negligent misrepresentations, the Plaintiff has suffered irreparable harm, and general, special and consequential damages, exceeding $5,000.00 and exceeding $75,000.00, and injuries and losses, including but not limited to franchise fees, royalties, income, fees, costs, attorney's fees, and injuries, and lost reputation and goodwill in the craft beer industry and elsewhere, and other compensation, benefits, and other damages, to its detriment.

## COUNT XIII – AIDING AND ABETTING
### (as to Defendants CBC-Gardiner and Callinan)

237.    The Plaintiff reasserts Paragraphs 1 through 236 of the Complaint, together with **Exhibits**, and restates and incorporates them herein by reference.

238.    As set forth herein, Defendants John Does 1-20 made false, untrue, and defamatory statements against the Plaintiff, Craft Beer Stellar, LLC, in the Reviews and posts on the website of Glassdoor, Inc.

239.    As set forth herein, Defendants John Does 1-20 illegally and improperly posted the Plaintiff's trade secrets and confidential and proprietary information, in breach of their contractual duty pursuant to their respective Franchise Agreements and/or their duty of loyalty to their employer, in the Reviews and posts on the website of Glassdoor, Inc.

240.    By its actions set forth herein, Defendants CBC-Gardiner and Callinan aided and assisted in Defendant John Does 1-20 in their violations of law, their unfair and deceptive trade practices, and misappropriation and publicly disseminating and distributing trade secrets and confidential information of CBS, and causing the commission of defaming and disparaging the Plaintiff, by maintaining and the defamatory and disparaging statements, knowing they contained trade secrets and confidential and proprietary information and are, and were, false and have harmed and injured the Plaintiff.

241.    By aiding and abetting Defendant John Does violations of law, their unfair and deceptive trade practices, and misappropriation and publicly disseminating and distributing trade secrets and confidential information of CBS, Defendants CBC-Gardiner and Callinan caused the commission of defaming and disparaging of the Plaintiff.

242.    As a direct and proximate cause of Defendants' aiding and abetting of the violations of law of the Defendant Does, the Plaintiff has suffered irreparable harm, and general, special and

consequential damages, exceeding $5,000.00 and exceeding $75,000.00, and injuries and losses, including but not limited to franchise fees, royalties, income, fees, costs, attorney's fees, and injuries, and lost reputation and goodwill in the craft beer industry and elsewhere, and other compensation, benefits, and other damages, to its detriment.

### COUNT XIV – MISAPPROPRIATION AND VIOLATIONS OF MASSACHUSETTS TRADE SECRETS LAW / M.G.L. C. 93, §§ 42 & 42A (as to Defendants CBC-Gardiner, Callinan and John Does 1 – 20)

243.     The Plaintiff reasserts Paragraphs 1 through 242 of the Complaint, together with **Exhibits**, and restates and incorporates them herein by reference.

244.     At all relevant times herein, the Plaintiff owned and maintain, in its possession, custody or control, trade secrets and confidential and proprietary information as relating to The Brand's business and/or the business of its franchisees, and as protected under the law of the Commonwealth of Massachusetts, including but not limited to M.G.L. c. 93, §§ 42 & 42A.

245.     The Plaintiff's trade secrets and confidential and proprietary information consisted on formula, patterns, devices and/or a compilation of information that is used, and was used during the relevant time period, in CBS's business and/or the businesses of its franchisees and which gave the Plaintiff and/or its franchisees an opportunity to obtain an advantage over competitors who did not know or use the same.

246.     Under the law of the Commonwealth of Massachusetts, including but not limited to M.G.L. c. 93, §§ 42 & 42A, a trade secret and/or confidential information may consist of financial, operational, marketing, scientific, technical, merchandising production and/or management information, and/or it may consist of a design, process, procedure, formula, invention, or improvement, so long as it is kept secret and gives a party an advantage or potential advantage over competitors.

247.     Under the law of the Commonwealth of Massachusetts, including but not limited to M.G.L. c. 93, §§ 42 & 42A, a trade secret and/or confidential information is any information that can be used in the operation of a business or other enterprise and that is sufficiently valuable and secret, or not publicly available, to afford an actual or potential economic advantage over others.

248.     As set forth herein and at all relevant times, under the law of the Commonwealth of Massachusetts, including but not limited to M.G.L. c. 93, §§ 42 & 42A:

a)      the financial, operational, marketing, scientific, technical, merchandising production and/or management information, in the possession, custody and/or control of the Defendants, were the Plaintiff's trade secrets and/or confidential and proprietary information;

b)      the Plaintiff had taken reasonable steps to preserve the secrecy and confidentiality of its trade secrets and confidential and proprietary information; and

c)      the Defendants acquired and/or used CBS's trade secrets and/or confidential and proprietary information by improper means or through a breach of their duty of confidentiality.

249.     As set forth herein, the Plaintiff's trade secrets and confidential and proprietary information:

a)      were not known or understood, or such knowledge or understanding was limited and/or restricted, outside of the business of The Brand and/or its franchisees;

b)       were not known or understood, or such knowledge or understanding was limited and/or restricted, by, between and/or among employees and/or others involved with the business of The Brand and/or its franchisees;

c)       the Plaintiff had established and employed reasonable and appropriate measures to guard and protect the secrecy of its trade secrets and confidential and proprietary information;

d)       The Brand's trade secrets and confidential and proprietary information was valuable to CBS and to its competitors;

e)       The Brand created its trade secrets and confidential and proprietary information by and through a significant and material expenditure of effort and money, including but not limited to numerous man hours, significant investment of its expertise and experience, and investment of its scarce financial resources into the creation of the same; and/or

f)       The Brand's trade secrets and confidential and proprietary information were highly difficult to properly be acquired or duplicated by CBS's competitors

250.     As set forth herein and at all relevant times, under the law of the Commonwealth of Massachusetts, including but not limited to M.G.L. c. 93, §§ 42 & 42A, the Plaintiff took commercially reasonable steps to preserve the secrecy and confidentiality of its trade secrets and confidential and proprietary information.

251.     As set forth herein and at all relevant times, under the law of the Commonwealth of Massachusetts, including but not limited to M.G.L. c. 93, §§ 42 & 42A, the Plaintiff reasonably:

a)       required confidentiality in all of its Franchise Agreements, in express terms, and of all of its employees;

b)      took adequate and appropriate security precautions, including requiring the use of Basecamp and other technological and software precautions, for all communications between and among The Brand and its franchisees;

c)      limited and/or prohibited the disclosure of trade secrets and/or confidential and proprietary information of CBS, to a "need-to-know" basis;

d)      ensured that its trade secrets and confidential and proprietary information were not placed in the public domain, or rendered readily ascertainable by third-parties; and/or

e)      maintained confidentiality in its business dealings and communications with its franchisees and its employees.

252.    As set forth herein and at all relevant times, under the law of the Commonwealth of Massachusetts, including but not limited to M.G.L. c. 93, §§ 42 & 42A, the Defendants had acquired the Plaintiff's trade secret and confidential and proprietary information pursuant to a duty to maintain the information in confidence and could not use them or disclose them, even after a termination, if at all, of relevant Franchise Agreement.

253.    As a direct and proximate cause of the Defendants' violation of the law of the trade secrets law of the Commonwealth of Massachusetts, including but not limited to M.G.L. c. 93, §§ 42 & 42A, the Plaintiff has suffered irreparable harm, and general, special and consequential damages, exceeding $5,000.00 and exceeding $75,000.00, and injuries and losses, including but not limited to franchise fees, royalties, income, fees, costs, attorney's fees, and injuries, and lost reputation and goodwill in the craft beer industry and elsewhere, and other compensation, benefits, and other damages, to its detriment.

**COUNT XV - VIOLATIONS OF MASSACHUSETTS
CONSUMER PROTECTION ACT / M.G.L. C. 93A, §§ 2 & 11
(as to Defendants CBC-Gardiner, Callinan and John Does 1 – 20)**

254.     The Plaintiff reasserts Paragraphs 1 through 253 of the Complaint, together with **Exhibits**, and restates and incorporates them herein by reference.

255.     At all relevant times herein, Defendants conducted a trade or business, as defined by the Massachusetts Consumer Protection Act, M.G.L. c. 93A, within the Commonwealth of Massachusetts.

256.     The conduct of the Defendants, as described herein, constitutes unfair and deceptive trade practices and anti-competitive acts, under Sections 2 and 11 of the Consumer Protection Act, including but not limited to, the following that:

a)     executed the Franchise Agreements with full knowledge and understanding of the Defendants' obligations, including but not limited to the obligation to protect and maintain CBS's confidential and proprietary information, to the Plaintiff;

b)     fraudulently induced the Plaintiff to enter into the Franchise Agreements, without intending to honor the same and thereby breached their duty of loyalty and their promises and the reasonable expectations of the Plaintiff;

c)     fraudulently concealed from the Plaintiff the full and complete details of the source of the Reviews by anonymously posting the same;

d)     aided and abetted the defamation, disparagement and breaches of contract of the Defendant Does, and their violations of the Defend Trade Secrets Act and the Computer Fraud and Abuse Act;

e)     knowingly and intentionally concealed these activities from the Plaintiff, to its detriment; and/or

f)      violated the requirements, terms and conditions of existing statutes, rules and regulations meant for the protection of the public's health, safety or welfare.

257.    As a direct and proximate cause of Defendants' violations of the Massachusetts Consumer Protection Act, M.G.L. c. 93A §§ 2 and 11, the Plaintiff has suffered irreparable harm, and general, special and consequential damages, exceeding $5,000.00 and exceeding $75,000.00, and injuries and losses, including but not limited to franchise fees, royalties, income, fees, costs, attorney's fees, and injuries, and lost reputation and goodwill in the craft beer industry and elsewhere, and for punitive damages, including multiple or treble damages, and attorney's fees, costs and statutory interest, other compensation, benefits, and other damages, to its detriment.

## COUNT XVI – CIVIL CONSPIRACY
### (as to Defendants CBC-Gardiner, Callinan and John Does 1 – 20)

258.    The Plaintiff reasserts Paragraphs 1 through 257 of the Complaint, together with **Exhibits**, and restates and incorporates them herein by reference.

259.    As set forth herein, the Defendants executed the Franchise Agreements with full knowledge and understanding of the Defendants' obligations, including but not limited to the obligation to protect and maintain CBS's trade secrets and confidential and proprietary information, to the Plaintiff.

260.    As set forth herein, the Defendants fraudulently induced the Plaintiff to enter into the Franchise Agreements with them, without intending to honor the same and thereby breached their promises and the reasonable expectations of the Plaintiff.

261.    As set forth herein, the Defendants fraudulently concealed from the Plaintiff the full and complete details of the source of the Reviews by anonymously posting the same.

262.    As set forth herein, the Defendants violated the Defend Trade Secrets Act and the Computer Fraud and Abuse Act, and the Massachusetts trade secret laws, M.G.L. c. 93, §§ 42 and 42A, and the Massachusetts Consumer Protection Act, M.G.L. c. 93A §§ 2 and 11.

263.    Defendant CBC-Gardiner and Callinan aided and abetted the defamation, the disparagement, and the breaches of contract and duties of loyalty of the Defendant John Does, and their violations of the Defend Trade Secrets Act and the Computer Fraud and Abuse Act, and the Massachusetts trade secret laws, M.G.L. c. 93, §§ 42 and 42A, and the Massachusetts Consumer Protection Act, M.G.L. c. 93A §§ 2 and 11.

264.    The Defendants were made aware and knew that false, defamatory and disparaging Reviews were publicly disseminated and distributed, in breach of contractual duties to protect and maintain confidentiality, and in breach of duties of loyalty, to the detriment of the Plaintiff.

265.    As a direct and proximate cause of Defendants' civil conspiracy, the Plaintiff has suffered irreparable harm, and general, special and consequential damages, exceeding $5,000.00 and exceeding $75,000.00, and injuries and losses, including but not limited to franchise fees, royalties, income, fees, costs, attorney's fees, and injuries, and lost reputation and goodwill in the craft beer industry and elsewhere, and for punitive damages, including multiple or treble damages, and attorney's fees, costs and statutory interest, other compensation, benefits, and other damages, to its detriment.

### COUNT XVII  - ACCOUNTING / CONTRUCTIVE TRUST - DECLARATORY / EQUITABLE RELIEF (as to Defendants CBC-Gardiner, Callinan and John Does 1 – 20)

266.    The Plaintiff reasserts Paragraphs 1 through 265 of the Complaint, together with **Exhibits**, and restates and incorporates them herein by reference.

267.     Under the Franchise Agreement, the Plaintiff had, and continue to have, the right to audit the books and records of the Defendants, which had, and continue to have, a duty to provide an accounting of the financial records of CBC-Gardiner and the craft beer store.

268.     Under the Franchise Agreement, the Defendants had, and continue to have, a duty to render an accounting to the Defendants, and to hold and maintain any and all profits, benefits and/or proceeds in a constructive trust for the Plaintiff.

269.     The Defendants have refused and failed, and continue to refuse and fail, to provide an accounting or a constructive trust, in any manner whatsoever, or to provide access to the Defendants' financials records to permit the Plaintiff to conduct an audit of, *inter alia*, the operational and financial details and supporting documentation.

270.     As a direct and proximate cause of the Defendants' refusal and failure to provide an accounting, a constructive trust or access for the Defendants' books and records, in any manner whatsoever, the Plaintiff has suffered irreparable harm, and general, special and consequential damages, exceeding $5,000.00 and exceeding $75,000.00, and injuries and losses, including but not limited to franchise fees, royalties, income, fees, costs, attorney's fees, and injuries, and lost reputation and goodwill in the craft beer industry and elsewhere, and for punitive damages, including multiple or treble damages, and attorney's fees, costs and statutory interest, other compensation, benefits, and other damages, to its detriment.

## VI. <u>REQUESTS FOR RELIEF</u>

WHEREFORE, the Plaintiff, Craft Beer Stellar, LLC, respectfully requests that this Honorable Court grant it the following relief:

A)      determine, order, adjudge and hold that the Defendants have violated the Defend Trade Secrets Act, 18 U.S.C. §§ 1836, 1836(b)(1), *et seq.*, and are liable under the same;

B)      determine, order, adjudge and hold that the Defendants have violated the Computer Fraud and Abuse Act, 18 U.S.C. §§ 1030, 1030(g), *et seq.*, and are liable under the same;

C)      determine, order, adjudge and hold that the Defendants violated the law of the Commonwealth of Massachusetts, including but not limited to the following: a) breach of contract; b) breach of implied covenant of good faith and fair dealing; c) unjust enrichment; d) promissory estoppel / detrimental reliance; e) defamation; f) commercial (trade) disparagement; e) tortious interference with prospective business relations; g) fraud and deceit; h) negligent misrepresentation; i) misappropriation and violation of the Massachusetts trade secrets law, including but not limited to M.G.L. c. 93, §§ 42 & 42A; j) violation of the Massachusetts Consumer Protection Act, M.G.L. c. 93, §§ 2 & 11; k) civil conspiracy; and/or l) accounting / constructive trust / declaratory relief, as alleged herein;

D)      determine, order, adjudge and hold that the Defendant CBC-Gardiner and Callinan aided and abetted the violation of the law of the Commonwealth of Massachusetts of the Defendant John Does; and violated: a) the Defend Trade Secrets Act, 18 U.S.C. §§ 1836, 1836(b)(1), *et seq.*; b) the Computer Fraud and Abuse Act, 18 U.S.C. §§ 1030, 1030(g), *et seq.*; c) the Massachusetts trade secrets law, including but not limited to M.G.L. c. 93, §§ 42 & 42A; d)  the Massachusetts Consumer Protection Act, M.G.L. c. 93, §§ 2 & 11; and/or e) civil conspiracy, as alleged herein;

69

E)      determine that the Defendants are liable, as set forth herein, and for all damages, losses and costs, as alleged herein;

F)      order, award and award temporary, preliminary and permanent injunctive and equitable relief to the Plaintiff;

G)      determine and award the Plaintiff the actual losses sustained by it as a result of the Defendants' violations of law, as set forth herein;

H)      render an award on behalf of the Plaintiff, on all Counts of the Complaint, and issue findings of fact and rulings of law, as necessary and appropriate, that the Defendants are liable, in all respects;

I)      order, decide, adjudge, and determine that the Defendants' liability is for all losses, injuries and damages, special, consequential, general, punitive and/or otherwise, and for all interest and costs, as alleged herein;

J)      award the Plaintiff its costs, including but not limited to filing fees, costs, expenses and interest, for being required to bring this action;

K)      award the Plaintiff its actual attorneys' fees, for being required to bring this action, pursuant to the Massachusetts Consumer Protection Act, M.G.L. c. 93A §§ 2 & 11;

L)      award the Plaintiff multiple, double, treble and/or punitive damages, pursuant to the Massachusetts Consumer Protection Act, M.G.L. c. 93A §§ 2 & 11;

M)      order equitable, and temporary, preliminary and permanent injunctive relief, as to the violations, *inter alia*, of the confidentiality and non-competition provisions of the Agreement;

N)      order an accounting and constructive trust be established, and order declaratory relief, as may be requested by the Plaintiff; and/or

O)      any additional relief which this Honorable Court deems just and proper.


**<u>PLAINTIFF DEMANDS TRIAL BY JURY ON ALL COUNTS SO TRIABLE.</u>**


Respectfully Submitted,
PLAINTIFF, Craft Beer Stellar, LLC,

By its Attorneys,


<u>    /s/  Philip M. Giordano    </u>
Philip M. Giordano, Esq. (BBO No. 193530)
Russell A. Haverty, Esq. (BBO No. 693260)
Giordano & Company, P.C.
REED & GIORDANO, P.A.
47 Winter Street, Suite 800
Boston, Massachusetts 02108-4774
Telephone: (617) 723-7755
Facsimile: (617) 723-7756
Email: pgiordano@reedgiordano.com
Dated: November 19, 2018          Email: rhaverty@reedgiordano.com